530 P.2d 940

**BURLINGTON NORTHERN, INC., a corporation, Plaintiff-Respondent,**

v.

**Andrew FINNEMAN and Ethel A. Finneman, husband and wife, Defendants,**

**Wesley J. Carnegie et al., Defendants-Appellants.**

**No. 11641.**

Supreme Court of Idaho.

Dec. 24, 1974.

Rehearing Denied Jan. 30, 1975.

Scott W. Reed, Coeur d'Alene, for defendants-appellants, Carnegie.

Paul D. McCabe, Coeur d'Alene, for defendants-appellants, Bodine.

R. Paul Tjossem, Seattle, Wash., E. L. Miller, Coeur d'Alene, for plaintiff-respondent, Burlington Northern, Inc.

McQUADE, Justice.

This action arises out of a condemnation proceeding brought by respondent Burlington Northern, a railroad corporation, against four property owners in Kootenai County, Idaho, for the purpose of constructing a classification yard at Hauser Lake near Rathdrum in Kootenai County. The appellants Bodines and Carnegies, contested the condemnation action, contending that the respondent lacked the statutory and constitutional authority to exercise the power of eminent domain for the purposes intended. The defendants Andrew and Ethel Finneman did not appear at the hearing and are not parties to this appeal.

The respondent corporation was created as a result of a merger of several operating railroad corporations pursuant to approval from the Interstate Commerce Commission. It is undisputed from the record below that:

1. Burlington's railroad operations cover 25,000 miles of main line and branch line trackage reaching 18 states and 3 provinces of British Columbia. Its services include transporting freight, U. S. mail and government supplies, and also furnishing the only linkup to the Amtrack passenger service that the State of Idaho has at Sandpoint.

2. Within the State of Idaho, Burlington is a common carrier servicing Moscow, Bonners Ferry, Lewiston, Coeur d'Alene and Sandpoint. Of the 426,000 cars that the respondent handles annually, approximately 100 cars per day or 36,000 per year originate within the State of Idaho. Approximately 500 miles of the respondent's 25,000 mile operation are situated within the State of Idaho.

3. The respondent has negotiated in good faith with each appellant in an effort to acquire his property; that independent appraisals were made of all the properties; that each appellant has refused the respondent's offers, and that each appellant has refused to further negotiate with the respondent.

Respondent filed this action asking the district court to decree pursuant to the provisions of Chapter 7, Title 7 of the Idaho Code, that need and necessity existed for the acquisition and condemnation of the aforementioned parcels of land. The court ruled in the respondent's behalf. That judgment is appealed to this Court. We affirm.

The sole issue before this Court is whether the respondent railroad corporation has the power to condemn the appellants' land in Kootenai County to construct a railroad classification yard. Such authority is granted under I.C. 62–104(7), and (9).[1] These provisions empower a railroad corporation:

> "(7) To purchase lands, timber, stone, gravel or other materials to be used in the construction and maintenance of its road, and all necessary appendages and adjuncts, or *acquire them in the manner provided in the Code of Civil Procedure for the condemnation of lands*; * * *"
> [emphasis added.]

---

1. We find it unnecessary to pass upon the respondent's contention that its right to condemn is also authorized under Art. 1, Sec. 14 and Art. 11, Sec. 5 of the Idaho Constitution.

"(9) To erect and maintain all necessary and convenient buildings, stations, depots, fixtures and machinery for the accommodation and use of their passengers, freight and business."

A classification yard falls within the broad language employed by the Legislature. The trial court found:

### X.

"That as result of the funneling of traffic, as result of the necessity of train makeup and the result of necessity to better serve shippers and the consuming public, it is necessary for the plaintiff to have, maintain and operate east of Spokane, but as near to Spokane as is reasonably possible, a railroad classification yard for the purpose of blocking of cars, making up of trains, diversifying rail traffic for the more efficient, economical and prompt handling of freight and freight traffic."

### XI.

"That from an engineering point of view and concept, the Court finds that the land owned by the defendants in the Hauser Lake area is necessary to the plaintiff for the construction, maintenance and operation of a railroad classification yard; that the taking thereof from the defendants is needed and is necessary unto the plaintiff for the maintenance, construction and operation of a railroad classification yard."

Since this finding is supported by substantial and competent evidence it will not be disturbed on appeal. Big Lost River Irrigation District v. Zollinger.[2]

■ The power of eminent domain, where clearly granted must be capable of adapting to the changing times. While the present expanded classification yard is a concept of relatively recent vintage, this Court holds, that under the circumstances of this case, it is an adjunct or appendage necessary for the accommodation and use of Burlington Northern's operation. Accordingly, we conclude that the respondent had the authority to exercise the power of eminent domain pursuant to I.C. 62–104 (7) and (9).

Costs to respondent.

SHEPARD, C. J., and DONALDSON and BAKES, JJ., concur.

2. 83 Idaho 401, 363 P.2d 706 (1961).