784 P.2d 339

**Joseph P. ROBERTS and Wanda L. Roberts, husband and wife, Plaintiffs–Respondents–Cross Appellants,**

**v.**

**Sherman SWIM and Rhea Swim, husband and wife, Defendants–Appellants–Cross Respondents.**

No. 16960.

Court of Appeals of Idaho.

Nov. 2, 1989.

Petition for Review Denied Jan. 16, 1990.

William D. Olson of Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendants-appellants-cross respondents.

Robert D. Kerr, Jr., Blackfoot, for plaintiffs-respondents-cross appellants.

## SUBSTITUTE OPINION

The Court's prior opinion, dated April 28, 1989, is hereby withdrawn.

SWANSTROM, Judge.

Joseph and Wanda Roberts brought an action claiming that either a public roadway or a private easement existed on two routes across the property of Sherman and Rhea Swim. The district court held that an easement existed on one of the two routes by prescriptive use. The Swims have appealed, contending that the evidence was insufficient to establish the prescriptive easement. A cross-appeal raises additional issues which we summarize as follows: (1) whether the court erred in failing to find the existence of a prescriptive easement or easement by necessity on both routes, or that some part of the routes are public roads; and (2) whether the court erred in failing to award damages and attorney fees.

Because most of our discussion concerns the actions of Mr. Roberts and Mr. Swim, we will refer to Roberts and Swim as though they were singular parties to this appeal. Roberts and Swim own ranches in Power County, adjacent to the easterly boundary of the Fort Hall Indian Reservation of the Shoshone–Bannock Tribes. A public road within the reservation, Rattlesnake Road, provides access to the ranches from the west. The road reaches Roberts' "home place" to the north. Further south it leads to a driveway from the reservation boundary up to a ranch house owned by Swim near the northerly side of Midnight Creek. Roberts owns two parcels of land a quarter of a mile apart, separated by a canyon through which Midnight Creek flows. Roberts' "home place," or Parcel B, lies northerly of Midnight Creek. Parcel A, the southeast quarter of section 18, lies southerly of Midnight Creek. Parcel A is mostly on an isolated hilly plateau lying between the confluence of Midnight Creek and Little Midnight Creek. It is surrounded on three sides by BLM land and on the fourth side by Swim's property. An illustrative sketch is appended to this opinion.

Roberts claims the right to use roads on Swim's property which generally follow the two creeks from their confluence up the canyons to his two parcels. Although Rattlesnake Road provides Roberts with a public roadway to his home place, he claims the right to use the two creek roads through Swim's property to reach Parcel A with vehicles and farm equipment and to give him an alternate route to his home place. Swim owns the property where the creeks and the roads converge. Above his house, a jeep trail or road continues parallel to Midnight Creek. This road exits Swim's property, crossing the neighboring BLM property, and enters the northwest corner of Roberts' Parcel A. The road then turns north, crossing additional BLM property,

and eventually heads back west to enter the southeast corner of Roberts' Parcel B.

The second road also originates in the area of Swim's driveway. This road heads southeast, crossing Midnight Creek and follows a separate waterway known as Little Midnight Creek. After this road exits Swim's property, it crosses the southern portion of the adjoining BLM property and enters the southwest corner of Roberts' Parcel A.

At one time, Swim was willing to grant Roberts permission to use the roads but he resisted Roberts' claim of a *right* to such use. This lawsuit resulted from Swim's efforts to block the use. Following trial to the court, the judge issued a memorandum decision. After finding that the roads were not public roads, that no public easements existed across Swim's property to either Parcel A or Parcel B, and that Roberts had proved no private prescriptive easement to Parcel B, the court stated:

> There is evidence, though conflicting, of an easement to Parcel A by prescription. The Court recognizes that there was evidence also of the limited farming of Parcel A by plaintiffs Roberts and consequently limited use of the access. However, the Court is satisfied that the use under Idaho law does establish a prescriptive easement. That easement across the Swim property, however, is useful only if plaintiffs also have a right to cross BLM ground. Nothing in this decision is meant to suggest [sic] or affect plaintiffs' rights across BLM ground. It is also clear from the evidence that the easement use was for the purpose of farming and not for other purposes.

The prescriptive easement to Parcel A was described by the court as "sufficient to accommodate grain combines and be at least eighteen feet wide." In order to "accommodate" the easement, Swim was ordered to bear the expense of replacing a culvert across Midnight Creek which he had removed.

The court then directed "Plaintiffs [Roberts] to prepare proposed findings of fact and conclusions of law consistent with this decision." Roberts' counsel was reluctant because his client had hardly prevailed. He at first declined, citing *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977), but complied with the court's later request for both parties to submit proposed findings and conclusions. Both did, but the court adopted, verbatim, the findings and conclusions prepared by Swim's counsel.

■ In an appeal such as this we are presented with a review of mixed questions of law and fact. As to findings made by the district court, we will defer to those that are supported by substantial evidence. I.R.C.P. 52(a). We exercise free review on the question whether the facts found are sufficient to satisfy the legal requirements for the existence of a prescriptive easement. *See Burrup v. Stanger,* 114 Idaho 50, 753 P.2d 261 (Ct.App.1988), *aff'd,* 115 Idaho 114, 765 P.2d 139 (1988).

■ The Supreme Court and this Court have repeatedly warned that findings ought not be prepared by counsel and adopted verbatim by the trial judge unless the judge previously has given sufficiently detailed directions for their preparation. Here, the decision failed to adequately guide the preparation of critical findings. Nor is it surprising that the findings prepared by the *defendant* are inadequate to support *plaintiff's* claim of easement. The findings relating to Roberts' use of the roadways across Swim's property are essentially limited to the following:

> Some clearing and farming operations were conducted on parcel A by Plaintiffs at various times after acquiring the property. The evidence is unclear whether Plaintiffs used a route from parcel B to point B on Exhibit 4, or used a route going up Little Midnight Creek. The time and duration of any clearing and planting was not sufficiently established by the evidence except for the years 1967 to 1968 and 1980–1985, when some crops were raised on parcel A.

■ A claimant, in order to acquire a prescriptive easement in Idaho, must present reasonably clear and convincing evidence of open, notorious, continuous, unin-

terrupted use, under a claim of right, with the knowledge, actual or imputed, of the owner of the estate for the prescriptive period. *West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973); *Melendez v. Hintz,* 111 Idaho 401, 724 P.2d 137 (Ct.App.1986). The use of the land must also constitute some actual invasion or infringement of the right of the landowner. *Trunnell v. Ward,* 86 Idaho 555, 389 P.2d 221 (1964). A prescriptive right cannot be obtained if use of the servient estate is by permission of the landowner. State ex rel. *Haman v. Fox,* 100 Idaho 140, 594 P.2d 1093 (1979). However, proof of the claimant's "open, notorious, continuous and uninterrupted [use] for the prescriptive period, without evidence to explain how it began, raises a presumption that it was adverse and under a claim of right...." *Sinnett v. Werelus,* 83 Idaho 514, 522, 365 P.2d 952, 956 (1961). Two exceptions to this rule have been recognized: (1) when the *servient* land is wild, unenclosed or unimproved, a presumption arises that the use is permissive; (2) in the absence of evidence establishing whether use began adversely or with the permission of a servient owner, when the owner of the real property constructs a way over the property for his own use, the mere use by others which in no way interferes with his

use will be presumed to be by way of license or permission. *Simmons v. Perkins,* 63 Idaho 136, 118 P.2d 740 (1941); *Melendez v. Hintz, supra.*

The prescriptive period in Idaho is five years. I.C. § 5–203. To establish a prescriptive easement, Roberts was required to prove continuous, uninterrupted use of the roads for the prescriptive period. Roberts purchased his property in 1957. He commenced this action against Swim in September 1983. Therefore, before Roberts could succeed on his claim of an easement by prescription he needed to prove that he or his predecessors had used the roadways across Swim's property for some uninterrupted five-year period of time before this suit was filed.[1]

As is often the case with evidence concerning the use of roadways over a long period of years, the testimony here was uncertain and highly disputed. It was, and is, the province of the trial court to determine whether the plaintiffs presented "reasonably clear and convincing evidence" of open, notorious, continuous use of the claimed easements for some five-year period of time before the suit was filed. *West v. Smith, supra.*[2] If a claimant meets this standard of proof, then the trial judge

---

1. After release of our initial opinion in this appeal, Roberts petitioned for a rehearing. He has argued that we erroneously limited the proof to Roberts' use of the roadways, excluding any use by his predecessors in interest. He correctly points out that a claimant of a prescriptive easement may be entitled to rely on the adverse use by his predecessor for the prescriptive period or to couple such predecessor's use with his own use to establish the requisite five continuous years of adverse use. We question whether there is any substantial evidence showing that prior owners of Parcel A made regular and continuous use of the Little Midnight Creek Road to reach Parcel A. However, we will allow the trial court to specifically address this question in its findings. If the trial court does find evidence of prior use, then by applying appropriate rules the court will need to determine whether such prior use was adverse to or with the permission of the owner of the servient lands.

   In the absence of evidence explaining how such prior use began, *Sinnett v. Werelus, supra,* does allow a presumption that the use was adverse, but only if there is proof of the predecessor's "open, notorious, *continuous* and uninter-

rupted use for the prescriptive period." (Emphasis added.) We express no opinion whether either of the exceptions to the *Sinnett* rule might apply in this case.

2. On petition for rehearing, Roberts has argued that the burden of proving a prescriptive easement should only be by "a preponderance of the evidence." This argument, however, is not supported by applicable case law. The clear and convincing standard of *West* was founded upon the early Idaho case of *Last Chance Ditch Company v. Sawyer,* 35 Idaho 61, 204 P. 654 (1922). This standard has been uniformly upheld and applied in subsequent cases. *Cardenas v. Kurpjuweit,* 116 Idaho 739, 779 P.2d 414 (1989); *Lorang v. Hunt,* 107 Idaho 802, 693 P.2d 448 (1984); *Elder v. Northwest Timber Company,* 101 Idaho 356, 613 P.2d 367 (1980); *Cooper v. Boise Church of Christ of Boise, Idaho, Inc.,* 96 Idaho 45, 524 P.2d 173 (1974); *Branson v. Miracle,* 111 Idaho 933, 729 P.2d 408 (Ct.App.1986); *Melendez v. Hintz,* 111 Idaho 401, 724 P.2d 137 (Ct. App.1986); *Kaupp v. City of Hailey,* 110 Idaho 337, 715 P.2d 1007 (Ct.App.1986); *Merrill v. Penrod,* 109 Idaho 46, 704 P.2d 950 (Ct.App.1985) (review denied).

should be able to make findings as to the nature and frequency of the use, the route or routes which were used, the years during which the use occurred without interruption, and whether the use was adverse to the owner of the fee or was with permission, express or implied. No such findings were made here.

Complicating this case is the fact that—at different times—Roberts used two or more routes across Swim's property in going to or from his home place (Parcel B) or Parcel A. Moreover, Robert's use of the Little Midnight Creek route shifted from one creek-crossing location to another after Swim granted an easement in 1977 to a power company for construction and use of a roadway on his property. This is when the "culvert crossing" was constructed. None of the routes used by Roberts was constructed by him. Each route was in place and already in use by Swim or others before Roberts' use began. For example, Swim testified that he used the "trails" up the creeks to reach reservoirs, to fix fences, and to scatter stock salt. If there is an absence of evidence of adverse use by Roberts' predecessors in interest, then, of course, it is of importance whether *Roberts'* use began with permission, express or implied, or initially was adverse to Swim. Accordingly, the trial court should find not only *when* Roberts began using a certain route but also whether the use initially was adverse. There was also disputed testimony that Roberts' use of the various routes was interrupted at times by Swim's efforts to assert control over such use of roads on his property without his permission. These circumstances all suggest the need for particular findings concerning the nature, frequency and duration of the use of each route for which a claim of easement is made.

The absence of findings and conclusions may be disregarded by the appellate court *only* where the record is clear, and yields an obvious answer to the relevant question.... Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof

is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered; and, where there is no evidence which would support further findings material to the judgment, the judgment will simply be reversed, the plaintiff having failed to prove his claim. [Citations omitted; emphasis original.]

*Pope v. Intermountain Gas Co.,* 103 Idaho 217, 225, 646 P.2d 988, 996 (1982).

■ Under *Pope,* inadequate findings could result in a remand simply for more particularized findings on the prescriptive easement issues. However, Swim has argued that no substantial evidence exists to support any of the theories advanced by Roberts for an easement or right of way across Swim's property. If this is so, a remand for more particularized findings would be futile. Accordingly, consistent with *Pope,* we have undertaken a careful examination of the evidence to determine whether the evidence, together with reasonable inferences which could be drawn from it, when viewed in a way most favorable to Roberts, could support either of the easements claimed by Roberts. As to other issues (including the Roberts' claim of damages for interference with an easement), the findings of the court are adequate, and we uphold them.

Roberts first farmed Parcel A in 1968. Before that time he used Parcel A as "exchange ground" with the BLM, meaning that it was unfenced and open to cattle which were allowed to graze on the adjacent BLM property. Consequently, Roberts' primary use of either road was for moving farm equipment to and from Parcel A and Parcel B. This was accomplished by taking one of two routes: southwest down the Midnight Creek road past Swim's ranch house, across Midnight Creek, then east up Little Midnight Creek road to Parcel A, or south on Rattlesnake Road, east to Swim's driveway, then across Midnight Creek and up Little Midnight Creek. Due to the steep grade of Midnight Creek road, of the two routes, Roberts claimed to use the latter more frequently.

The evidence in the record establishes that Roberts carried out farming operations on Parcel A from 1968 until 1971. The record also establishes that similar operations were carried out from 1980 until 1983 and, subsequent to the commencement of the litigation, in 1984 and 1985. During these operations the roads were used to transport the farm equipment. There is no detailed evidence showing the frequency of use of the roads in the period between 1971 and 1980. Testimony regarding the farming operations during this period consisted only of broad statements that farming was "on a regular basis." While asserting that the farming was done on a rotation system with alternating years of summer fallow, neither Roberts nor his son could offer specific testimony regarding the crops or the years they were planted during this period. Department of Agriculture records that were admitted indicate that prior to 1980, the Parcel A was left fallow for a period of as much as three years.

We cannot conclude, however, under the requirements of *Pope*, that the available record yields "an obvious answer to the relevant question" of the use of the Little Midnight Creek route. The existing findings, as noted, are inadequate to support the trial court's conclusion that a prescriptive easement existed. Our review does not yield a clear indication that an easement either has or has not been established. We are, for example, unable to determine from the record whether the district court, in making its findings and conclusions, was aware that Roberts had the burden of presenting "reasonably clear and convincing evidence" establishing the requisite elements for an easement. As an appellate court, we cannot engage in the process of weighing the evidence presented. Much conflicting evidence was presented regarding the claimed use of the Little Midnight Creek road, particularly the various approaches and creek crossings at the lower end of this route. This necessitates a remand to the trial court for more particularized findings.

In addition, we note that the court failed to adequately state the precise route of the easement, if in fact one exists. An easement by prescription requires a showing by the claimant of a line of travel without material change or variation. Travel over a tract of land in various courses or directions for the prescription period is insufficient to establish a right of way over any particular path. 25 AM. JUR.2D *Easements and Licenses* § 63 (1966). Here the Court was confronted with evidence regarding use by Roberts of the older "basement house crossing" and the more recent "culvert crossing." The court must make a determination whether this variation in use was material and, if so, whether Roberts used one line of travel or both for the requisite prescriptive period.

We turn next to Roberts' allegation of error on cross-appeal that the district court erred by failing to find the existence of an easement by necessity on the Midnight Creek route. An easement by necessity arises where part of a tract is conveyed and, as a result of a severance, the part conveyed or the part retained is deprived of legal access to a public road. *Cordwell v. Smith*, 105 Idaho 71, 665 P.2d 1081 (Ct. App.1983) (review denied). To establish such an easement, three elements must be proved: (1) unity of ownership prior to division of the tract; (2) necessity for an easement at the time of severance; and (3) great present necessity. *Id.*

From the evidence presented, it is clear that Roberts failed to establish either of the first two required elements. There is no need to address the third. The record contains an extensive amount of material regarding the chain of title of the subject parcels. This evidence, however, fails to establish the requisite common grantor or unity of ownership prior to the division of the land. Roberts has established only that the land was at one time originally under public ownership. Original ownership by the public or state is not sufficient to constitute the necessary unity of ownership. Annot., *Unity of Title for Easement by Implication or Way of Necessity*, 94 A.L.R.3D 502, 517–18 (1979).

Roberts next contends the district court erred in failing to find that Midnight Creek road was a "public" road. Roberts argues first that the improved road or driveway from the reservation boundary line up to Swim's house was improved and maintained by the county highway district. Second, he argues that the road past Swim's house, while not maintained by the county, provides the only access to public lands along Midnight Creek.

Under I.C. § 40–202 a road may be declared a public highway. This statute provides that "all roads used as [such] for a period of five (5) years ... [which] have been worked and kept up at the expense of the public ... are highways." The main factual issues subsumed by the question of whether a road may be declared a public roadway are the "frequency, nature and quality of the public's use and maintenance of the road and the intentions of the landowners and county relevant to the use and maintenance." *Tomchak v. Walker*, 108 Idaho 446, 448, 700 P.2d 68, 70 (1985). A showing must be made that the public's use was more than only casual and desultory. *Kirk v. Schultz*, 63 Idaho 278, 119 P.2d 266 (1941). Regular maintenance and extensive public use are sufficient to establish the existence of the public status of the roadway. The maintenance of the road by a public agency and the use by the public must be for a period of five years. *Pugmire v. Johnson*, 102 Idaho 882, 643 P.2d 832 (1982). Such maintenance need only consist of work and repairs that are reasonably necessary; it need not be performed in each of five consecutive years nor through the entire length of the road. *State v. Nesbitt*, 79 Idaho 1, 310 P.2d 787 (1957), overruled on other grounds by *French v. Sorenson*, 113 Idaho 950, 751 P.2d 98 (1988). The intention of the county in maintaining the road must not be merely to provide gratuitous aid to the landowner. *Rice v. Miniver*, 112 Idaho 1069, 739 P.2d 368 (1987). Maintenance of a roadway by a public agency under an express contract, which exchanges such maintenance for limited public access while recognizing the private character of the road, creates no public rights in the roadway beyond those granted by the agreement. *Cordwell v. Smith, supra.*

We are in agreement with the conclusion of the district court that Midnight Creek road above Swim's house was not shown to constitute a public road. I.C. § 40–202. The district court found that Midnight Creek road was used by Swim and his predecessors for access to reservoirs along Midnight Creek and to facilitate farming operations. The court did not make any findings as to the nature, frequency or character of the public's use of the road. However, the record also discloses that no showing was made by Roberts of regular or customary use by the public. Here, the absence of findings will not affect the judgment. The evidence is also clear that no public maintenance of the road above Swim's house was undertaken. The county employee involved in the widening of Swim's driveway and installation of the cattle guard testified that the road was recognized as private.

At various times from 1971 to 1985 the county had improved the road up to Swim's residence by installing a cattle guard as well as having the road straightened, widened and graded. The record is clear that any maintenance of the road and improvements by the county were below Swims' house and did not incorporate the road proceeding up Midnight Creek. We also reject Roberts' argument concerning access to public lands along Midnight Creek. The necessity of public access is not germane to the determination of public road status under I.C. § 40–202.

In conclusion, we uphold the district court's ruling that the Midnight Creek road above Swim's house is not a public road. We also uphold the ruling that Roberts has no prescriptive easement over this part of the Midnight Creek road for access to either Parcel A or to Roberts' home place. Nor has Roberts proven any "way of necessity." We vacate the judgment so far as it grants a prescriptive easement to Roberts on Little Midnight Creek road and requires Swim to bear the expense of replacing the culvert crossing. We remand for more par-

ticularized findings by the court. The remaining provisions of the judgment in respect to Roberts' claim for damages and attorney fees are affirmed. Costs on appeal to appellant Swim.[3] No attorney fees awarded.

WALTERS, C.J., and BURNETT, J., concur.

3. In his brief accompanying the petition for rehearing, Roberts argues that an award was improper. He asserts that the award of costs to Swim inappropriately endorses Swim's preparation of inadequate findings and the violation of the special finding requirement of I.R.C.P. 52(a). Roberts also contends that he was a partially prevailing party and should not suffer an award of costs.

We do not agree with either of these contentions. This award of costs did not constitute an endorsement of Swim's actions. We are not left with a belief that Swim invited the errors requiring a remand nor do we conclude that an award of costs fails to enforce the requirement of I.R.C.P. 52(a). Our award was instead the result of Swim successfully arguing to vacate the judgment holding that an easement existed. Swim has also prevailed on the issue of damages.