867 P.2d 956

David N. COHEN and Vernice Cohen, husband and wife; Charles C. Leithe and Evelyn P. Leithe, husband and wife; Theodore Gunning and Dianne Gunning, husband and wife, Michael T. Kinney; John C. Matthews; and Washington Trust Bank, Trustee for Certain Beneficiaries, and A. Roderick Lindsay and Norma Lindsay, husband and wife, Plaintiffs–Respondents–Cross Appellants,

v.

Henry LARSON and Nancy Mae Larson, individually and as husband and wife, Defendants–Appellants–Cross Respondents.

No. 18901.

Supreme Court of Idaho, Coeur d'Alene, Oct. 1992 Term.

Dec. 30, 1993.

Rehearing Denied Feb. 7, 1994.

Charles W. Hosack, Coeur d'Alene, for defendants - appellants - cross - respondents. Charles W. Hosack, argued.

Scott W. Reed, Coeur d'Alene, for plaintiffs-respondents-cross-appellants. Scott W. Reed, argued.

BISTLINE, Justice.

In 1935, two friends, Edwin Matthews Sr. and Roderick A. Lindsay, purchased adjacent tracts of land on Lake Coeur d'Alene. They each built a single family residence on their respective acreages, thus gaining access to their respective properties from the lake or by foot from the public highway. In 1952, after repeated requests by the Matthews and Lindsays, Henry Larson cleared and leveled the right-of-way at the heart of this appeal. The Matthews and Lindsays financed the construction of the road which was to serve as the right-of-way thereafter called Lindsay Road. Crossing the Larsons' property, it provides vehicular access to the Matthews and Lindsay properties from the public highway.

The right-of-way was used unconditionally by the Matthews and Lindsays for several years. In 1967, 1968, and 1973, the Matthews sold various segments of their property. The purchasers of one segment, respondents Charles and Evelyn Leithe, continued to use the right-of-way with the Larsons' permission, building an access across their own property to the right-of-way. In 1979, the Lindsays sold their property to respondents David and Vernice Cohen, who also gained permission to use the right-of-way. At some point in time, the Larsons installed gates across the right-of-way to keep out cattle. The gates were kept locked from Labor Day until spring. All of the users inhabiting the Matthews/Lindsay properties knew the combination to the lock.

The Matthews sold the remainder of their property to the Kinneys and Gunnings in 1981. Shortly thereafter, in response to rumors that the Kinneys were going to build condominiums on their lots, the Larsons locked the gate with a new combination lock and refused to give out the combination to all but those who had been using the right-of-way since 1967. Consequently, in 1982, all of the respondents, hereafter designated as "the Cohen group," filed a complaint seeking to quiet title to the road and seeking damages, claiming an easement by prescription or by necessity. The complaint was later amended to seek condemnation.

Based on the testimony of Mrs. Larson, whose husband was then deceased, the trial court held that no easement by necessity or prescription existed, and that all past use of the road was strictly permissive. At the second phase of the trial,[1] the parties pre-

1. Referred to as the "second trial" by both parties. Apparently, the trial court entered a "judgment" as to the easement claims and was then reminded by the Cohen group that the parties had stipulated that the condemnation claim would be tried if the Cohen group lost as to the easement claims. The trial court then conducted this second phase of the trial, entering its "later" judgment on the condemnation issue only.

sented conflicting testimony concerning the necessity of the easement. The Cohen group testified that the Lindsay road provided the only reasonable, economic access to their respective properties. The Larsons, on the other hand, insisted that the Cohen group could access their properties by water and that the Cohen group's use of the road is not necessary or a public use. The trial court granted the Cohen group a permanent easement along the Lindsay road, not to exceed ten feet in width, to access not more than nine dwellings, on a theory of condemnation and awarded the Larsons compensation in the amount of $1,962. It also awarded the Larsons attorney fees for the condemnation phase of the trial. This appeal follows.

The following issues are presented on appeal by the Larsons:

I. Whether the trial court erred in permitting the Cohen group to condemn Lindsay Road.

II. Whether the trial court awarded the Larsons appropriate compensation for the taking.

III. Whether the trial court awarded the Larsons appropriate interest on the compensation award.

IV. Whether the trial court erred in granting the Larsons attorney fees for the condemnation portion of the trial.

## THE LAW OF EMINENT DOMAIN

Article 1, § 14 of the Idaho Constitution provides that private property may be taken for a public use. This section of the Idaho Constitution is self-executing, leaving to the legislature only the task of providing the procedure for implementation. *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Idaho 556, 568, 155 P. 680, 684 (1916). Idaho Code § 7–704 requires that any taking for a public use be necessary. Thus, it is incumbent upon the Cohen group to show not only that the use for which they claim the right to condemn Lindsay Road is a public use, but also that such use is necessary.

### A. The Public Use Requirement

Article 1, § 14 defines the concept of public use as a use "*necessary* to the complete development of the material resources of the state or the preservation of the health of the inhabitants." Idaho Const. art. 1 § 14 (emphasis added). The legal concept of eminent domain generally applies only to the government or to its designated agents. However, there are certain Idaho cases which have upheld the right of private entities to exercise the power of eminent domain in certain limited circumstances. These cases involve exploitation of natural resources for the benefit and the use of the general public. For example, in *Potlatch Lumber Co. v. Peterson*, 12 Idaho 769, 88 P. 426 (1906), the Court found that the Potlatch Company was entitled to condemn some twelve acres of land belonging to Peterson for use as a storage reservoir for its logs. The Palouse River was "the only means of transporting the timber from the forests to the market" and small dams and storage reservoirs were the only way to move the logs once water depth dropped below certain levels. 12 Idaho at 775, 88 P. at 427. In other instances, this Court has approved private condemnation for logging roads, *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Idaho 556, 558, 155 P. 680, 684 (1916), for pipelines, *Yellowstone Pipe Line Co. v. Drummond*, 77 Idaho 36, 287 P.2d 288 (1955), and for furnishing electricity, *Washington Water Power Co. v. Waters*, 19 Idaho 595, 115 P. 682 (1911). All of these cases involved private condemnation but, clearly, the proposed use for which a party's land was taken was to serve the public of this state. This Court has never held that private individuals may take the property of other private individuals in order to enhance their purely private enjoyment of their property.

The proposed use need not be strictly public, but it must at least benefit the public welfare or the economy *of the state*. See *Potlatch Lumber Co.*, 12 Idaho at 785, 88 P. at 431. The notion of public use is a flexible one depending on the needs and wants of the community, and we note that the public, the legislature, and the courts of this state have demonstrated an awareness of public benefits, including environmental and population concerns, that perhaps were not recognized a century ago. *Id.*, at 787, 88 P. at 432. See

*also Burlington Northern, Inc. v. Finneman,* 96 Idaho 456, 458, 530 P.2d 940, 942 (1974) ("[t]he power of eminent domain, where clearly granted must be capable of adapting to the changing times."). In light of this, we simply can not accept the Cohen group's argument that slightly expanded development of their lake side lot benefits the public of this state.[2] The Cohen group's proposed development would make available a maximum of seven new houses or condominiums to already-designated private purchasers. This is not something which is "necessary to the complete development of the material resources of the state" as required by the Constitution.[3] Nor has such an activity ever been recognized as conferring a benefit on the public sufficient to entitle a land owner to invoke the power of eminent domain in order to facilitate its accomplishment.[4] Indeed, an argument that such development actually does more harm than good to the general public is equally persuasive. New developments may pollute the already over-taxed Lake Coeur d'Alene, add to congestion, diminish the scenery and pristine quality of the shoreline, and so on. However, it is not the role of this Court to decide if more or less development is of greater or lesser benefit to society. We are persuaded that the Cohen group's use of their property is simply not a matter of public concern one way or the other; it is a purely private dispute and, as such, eminent domain is not the appropriate remedy.

We therefore hold that the trial court erred in ruling that the Cohen group's proposed use of the Lindsay Road is a public use.

## B. The Necessity Requirement

Because we find no public use associated with the easement sought by the Cohen group, we need not address the other prong of the test for eminent domain, the necessity requirement.

## CONCLUSION

Since we reverse the trial court on the issue of eminent domain, there is no compen-

---

**2.** The trial court states: "I hold that any use which tends to even indirectly contribute to the economic well-being of any considerable portion of the inhabitants of the State of Idaho is a public use within the meaning of Article I, Section 14, of the Idaho Constitution." We do not need to express an opinion on the accuracy of this statement because we hold that, even if this were true, there has been no showing that the Cohen group's proposed use of their property benefits a considerable portion of Idaho's inhabitants.

**3.** It may be true, as the trial court states, that a right of way need not be open to the public or even connect to a public road to be taken under the power of eminent domain, and that the farms or residences serviced by a right-of-way need not be in existence at the time condemnation of the right of way is sought. See Memorandum Opinion pp. 10–13. However, the trial court goes awry in its application of the standard that the use sought need only be "necessary to the complete development of the material resources of the state." We cannot agree that the Cohen group's proposed use of the Lindsay road meets this standard. The development the group seeks can occur with or without this road and, regardless, the construction of a few seasonal residences does not ensure the "complete development of the material resources of the state" as this phrase was meant. We believe this provision in the Constitution was meant to enable those seeking to develop valuable resources, such as timber, minerals, or other products of natural resources, from being thwarted by an inability to get access to these resources across the property of another. The framers of our Constitution could not have intended that private individuals wishing to facilitate access to their homes should be able to condemn the land of their neighbors for this purpose.

**4.** The trial court concedes that most of the Court's earlier decisions require that there be at least some actual or prospective public involvement in the activity in order for it to have a public benefit, but then reasons that the recent trend is toward a more expanded definition of the eminent domain power. The trial court cites *Boise Redevelopment Agency v. Yick Kong Corp.,* 94 Idaho 876, 499 P.2d 575 (1972), and *Burlington Northern, Inc. v. Finneman,* 96 Idaho 456, 530 P.2d 940 (1974), as examples. In *Yick Kong,* a government agency was asserting the right to condemn private land for use in an urban renewal project which arguably, would primarily benefit private businesses in the area. Nevertheless, there is clearly a public purpose and a private benefit which accrues from urban renewal. In *Burlington Northern,* a private railroad company sought to condemn certain land in order to build a railroad classification yard. This was a private enterprise seeking to use eminent domain for a purpose which perhaps contained some private benefit for Burlington Northern, but the public undoubtedly also benefited from railroads.

sation award. Because this case presents a novel issue in this Court, whether private condemnation may be allowed in a situation involving a purely personal benefit, and was not brought frivolously, we reverse the trial court's award of attorney fees. Costs on appeal to appellants.

McDEVITT, C.J., TROUT, J., and REINHARDT, J. Pro Tem., concur.