IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35151

BOB BACKMAN and RHONDA )
BACKMAN, husband and wife, )
)
  Plaintiffs-Counterdefendants-Appellants, )
)
v. )
)
THOMAS L. LAWRENCE and DEBRA A. )
LAWRENCE, husband and wife, )
)
  Defendants, )
)
  and )
)
JAMES A. SPAGON and LINDA I. )
SPAGON, husband and wife; KEITH G. )
LLOYD and PRISCILLA I. LLOYD, )
husband and wife; BRUCE JOHNSON and )
DEBORAH JOHNSON, husband and )
wife; WESTON SCOTT MILLWARD, a )
married man; and PEND O'REILLE VIEW )
ESTATES OWNERS' ASSOCIATION, INC., )
an Idaho nonprofit organization; GREGORY )
ZIRWES and THERESA ZIRWES, husband )
and wife; CHRISTOPHER BESSLER, an )
individual; PATRICK MC KENNA and )
MICHELLE MC KENNA, husband and wife; )
CHRISTOPHER E. GRANT and SUSAN R. )
GRANT, husband and wife; and KEVIN D. )
SCHRADER, a single person, )
)
  Defendants-Counterclaimants-Respondents. )

Moscow, April 2009

2009 Opinion No. 68

Filed: May 12, 2009

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Charles Weeks Hosack, District Judge.

District court denial of claims for legal access, affirmed.

Meuleman Mollerup, LLP, Boise, for appellants. Richard Lee Stacey, Jr. argued.

Scott White Reed, Coeur d'Alene argued for respondents Spagon, et al.

Paine, Hamblen, Coffin, Brooke & Miller LLP, Coeur d'Alene, for respondent Schrader.

Featherston Law Firm, Chtd., Sandpoint, for respondent Grant.

_____

BURDICK, Justice

Appellants Bob and Rhonda Backman (the Backmans) seek access to their property in Bonner County via roadways that pass over land owned by Respondents Thomas and Debra Lawrence, James and Linda Spagon, Keith and Priscilla Lloyd, Bruce and Deborah Johnson, Weston Millward, Gregory and Theresa Zirwes, Christopher Bessler, Patrick and Michelle McKenna, Christopher and Susan Grant, and Kevin Schrader (Respondents). In addition, one of the roadways is maintained by Respondent Pend Oreille View Owners' Association, Inc. (POVE). The Backmans assert a right to access their property based upon claims of prescriptive easement, easement by necessity, and private condemnation. We affirm the district court's denial of the Backmans' claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Backmans own 100 acres of property in Bonner County, Idaho, within the northwest quarter of Section 8, which they purchased from Randy Powers in 2005. Respondents own the properties in Section 7 over which the Backmans seek access to their property. Respondent POVE maintains and controls the private roads identified as Turtle Rock Road, Redtail Hawk Road, and Inspiration Road that run through Section 7 as well.

Prior to 1904, all of the properties at issue in this dispute were owned by the United States Government. Following patents by the government, Humbird Lumber acquired ownership of the 120 acres in Section 8 that is now owned by the Backmans and Schrader. Humbird Lumber also owned an adjoining 120 acre parcel that consisted of the properties currently owned by Respondents Lawrence, Johnson, Lloyd, Grant, and Millward. In 1945, Humbird sold the 120 acres in Section 8, which began a series of conveyances that led to Powers acquiring the property in 1994. Powers conveyed the north 20 acres of the 120 acre parcel to Schrader's predecessor in 1995. The Backmans purchased their 100 acres from Powers in 2005.

The Backmans have limited their access claims to Turtle Rock Road and three extensions from that road, referred to as the Upper Road, Middle Road, and Lower Road. Turtle Rock Road runs from the public Baldy Mountain Road across a portion of property owned by the City of

Sandpoint, and continues east through the properties of McKenna, Bessler, Zirwes, and Lawrence. The road then turns north across the properties of Johnson, Lloyd, Millward, Grant, Spagon, and Rogers. The three extensions run east off Turtle Rock Road to Section 8. The Lower Road runs northwest over the properties of Lloyd, Johnson, and Grant. The Middle Road runs east across the Millward and Grant properties. The Upper Road runs from the intersection of Inspiration Way and the old Syringa Creek Road (the portion of Turtle Rock Road travelling north from the Millward property to the intersection with Inspiration Way and the Upper Road) east over the properties of Spagon, Rogers,[1] and Schrader.

Turtle Rock Road, as it presently exists, generally follows the route of the Syringa Creek Road as shown on the 1966 U.S.G.S. map. By 1966, various undefined logging operations, combined with random public use for outdoor recreation such as hunting and berry picking had established Syringa Creek Road. In the 1980s large landowners, including lumber companies, began to sell parcels in Section 7 to private individuals or developers who were interested in building residences. By the 1990s real estate developers were acquiring parcels in the east half of Section 7 for purposes of residential development and Respondents were purchasers of some of those parcels. While residential development began to occur in the east half of Section 7 in the 1990s, there was no residential development in the northwest quarter of Section 8. However, when the Backmans purchased the property from Powers in early 2005, they divided the 100 acres into five parcels of 20 acres each and advertised the parcels for sale.

Mr. Backman testified that when he inspected the property before purchase the "only obvious way" to the property was on Redtail Hawk Road, and they walked the rest of the property. However, the Backmans may have initially believed there was deeded access to the property when they purchased it, based upon a legal description in a title insurance policy. The parties agree that the property is legally landlocked in that it is not served by any public road and has no established right of easement access. Following trial, the district court filed its Memorandum Opinion on November 14, 2007, denying the Backmans' claims for prescriptive easement, easement by necessity, private condemnation, and any combination of the three theories. The district court then awarded Respondents their costs on March 10, 2008. The Backmans appeal the district court's denial of their claims for legal access to their property.

---

[1] The parties have represented that the Backmans reached an agreement with the Rogers for an easement.

## II. ANALYSIS

### A. Standard of review.

When reviewing the decision of the district court, this Court determines whether the evidence supports the court's findings of fact and whether the findings of fact support the conclusions of law. *Beckstead v. Price*, 146 Idaho 57, __, 190 P.3d 876, 880 (2008). "We will not disturb findings of fact that are supported by substantial and competent evidence, even if there is conflicting evidence." *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 298, 127 P.3d 196, 201 (2005). Evidence is substantial if a reasonable trier of fact would accept and rely upon it in determining findings of fact. *Id.* Furthermore, this Court will give due regard to the district court's appraisal of the credibility of witnesses who personally appear before the court. *Hughes v. Fisher*, 142 Idaho 474, 479-80, 129 P.3d 1223, 1228-29 (2006). However, this Court exercises free review over the district court's conclusions of law: "this Court freely reviews the question of whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement." *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999).

### B. Easement by necessity.

The Backmans argue the district court erred in denying their claim for an easement by necessity because there was unity of title and necessity. "An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Akers*, 142 Idaho at 301, 127 P.3d at 204. Two types of implied easements exist in Idaho: (1) a way of necessity, and (2) an easement implied from a prior use. *Davis,* 133 Idaho at 642, 991 P.2d at 367. One who claims an easement by necessity across another's land must prove "(1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement." *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 725, 874 P.2d 528, 536 (1994).

The Backmans first assert unity of title has been proven because the district court found that the properties had been commonly owned by the United States. They contend that this Court should overrule the language in *Roberts v. Swim*, 117 Idaho 9, 15, 784 P.2d 339, 345 (Ct. App. 1989), stating that common ownership in the United States does not satisfy the unity of title requirement, because the language in *Roberts* was dicta. In addition, the Backmans assert that

4

allowing for common ownership in the United States would be in accordance with Idaho's public policy calling for the full use of lands. The district court did not agree with the Backmans and found that unity of title did not exist as to all properties crossed by the access roads. We agree with the district court's determination that common ownership in the United States does not satisfy the unity of title requirement.

The Backmans are correct in their assertion that Idaho public policy favors the full use of lands, and this is one of the driving forces behind easements by necessity:

> [An easement by necessity] is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation….
>
>  . . . . It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway.

*Burley Brick & Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981) (quoting *Martino v. Fleenor*, 365 P.2d 247 (Colo. 1961)). However, Idaho courts have not used this public policy to expand the unity of title requirement to allow for it to be satisfied by common ownership in the United States. Specifically, the Idaho Court of Appeals stated in *Roberts*: "Original ownership by the public or state is not sufficient to constitute the necessary unity of ownership." 117 Idaho at 15, 784 P.2d at 345. Therefore, the Court of Appeals determined that the evidence had failed to establish the required unity of ownership. *Id*. In other Idaho cases addressing easements by necessity, unity of ownership has only been found in private owners.

The fundamental problem with going back to the United States Government as the original grantor has been stated succinctly by the Florida Supreme Court:

> It would be ruinous to establish the precedent contended for, since by it every grantee from the earliest history of the State, and those who succeed to his title, would have an implied right of way over all surrounding and adjacent lands held under junior grants, even to the utmost limits of the State.

*Guess v. Azar*, 57 So.2d 443, 444-45 (Fla. 1952).[2] The Backmans argue that this concern with unlimited implied right of ways is alleviated by the necessity element of a claim for an easement

---

[2] The Florida Supreme Court cited to a 1913 California case that provided a more expansive discussion on the issue:

> It is, in my judgment, very doubtful whether the doctrine of implied ways of necessity has any application to grants from the general government, under the public land laws. If it exists at all, it can be invoked against the government and its grantees as well as in their favor. Hence every grantee of a portion of the

5

by necessity. However, there would be little reason to have a unity of title element if it could be satisfied by common ownership in the United States.

The district court here found:

> [B]ut for the original common ownership of the United States, there has never been a unity of title of common ownership for the original Humbird Lumber property in question . . . and for either the property now owned by Spagons . . . or the property now owned by McKenna's [sic] and Besslers . . . .

The Backmans did not argue any differently, relying, instead, entirely on the contention that the unity of title requirement was satisfied by the common ownership in the United States. Therefore, we find that the unity of title element was not proven and the district court was correct in denying the Backmans' claim for easement by necessity.

## C. Prescriptive easement.

The Backmans next contend that they proved the elements of their prescriptive easement claim, and that the district court erred as a matter of law by misapplying "presumptions" not relevant to the claim. A party seeking to establish the existence of an easement by prescription must prove by clear and convincing evidence that use of the subject property is: "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five years." *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006).

A determination that a claimant has established a prescriptive easement involves entwined questions of law and fact. *Beckstead v. Price*, 146 Idaho 57, __, 190 P.3d 876, 880 (2008). "Each element is essential to the claim, and the trial court must make findings relevant to each element in order to sustain a judgment on appeal." *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). It is the province of the trial court to determine whether the plaintiffs presented "reasonably clear and convincing evidence" of each of the five elements. *Roberts v.*

---

public domain from the time the land laws were extended over the same and those succeeding to his title would have an implied right of way over the surrounding and adjacent public lands, and a junior grant thereof if necessary to reach his own land, and a junior grantee and his successors in interest would have such a way over a prior grant under similar circumstances simply because they derive title from a common source …. By public statute Congress has granted rights of way for the construction of highways over public lands not reserved for public use. Beyond this and the full protection of the title which it confers, it would seem that the government owes no duty or obligation and reserves to itself or its subsequent grantees no interest in the land granted except such as may appear on the face of the grant, or the law under which it was made, or be declared by a general statute in force at the time the interest of the grantee was acquired. *United States v. Rindge*, 208 F. 611, 619 (S.D. Cal. 1913).

*Swim*, 117 Idaho 9, 12-13, 784 P.2d 339, 342-43 (Ct. App. 1989). In addition, the creation of a private easement by prescription is not favored under Idaho law. *Elder v. Nw. Timber Co.*, 101 Idaho 356, 358, 613 P.2d 367, 369 (1980).

**1. The district court properly determined that the Backmans did not establish reasonably clear and convincing evidence of each element of a prescriptive easement.**

The Backmans base their prescriptive easement claim primarily on the use of the roads by Powers prior to their purchase in 2005. The Backmans argue that Powers's use satisfied the elements for a prescriptive easement for the statutory period of five years, asserting that after the initial logging from 1994 to 1996, Powers continued to maintain and use the roads accessing the property. They contend that Powers's testimony demonstrated clear and convincing evidence of each element of their prescriptive easement claim. However, the district court made findings relevant to each element that were supported by substantial, competent evidence. Therefore, we affirm the district court's determination that the Backmans did not present sufficient evidence to support their claim for a prescriptive easement.

**a. Open and notorious.**

First, the Backmans contend that Powers's use of Turtle Rock Road and the three extensions was open and notorious. A use must be sufficiently open and notorious so that a reasonable person would have discovered its occurrence. 4 *Powell on Real Property*, § 34.10(2)(f) (2000). "The purpose of the requirement that prescriptive use be open and notorious is to give the owner of the servient tenement knowledge and opportunity to assert his rights." *Baxter v. Craney,* 135 Idaho 166, 173, 16 P.3d 263, 270 (2000). Therefore, the use must rise to a level that would provide notice to "a servient landowner maintaining a reasonable degree of supervision over his premises." *Id.*

Powers's logging on the Backman property took place from 1994 to 1996 and was an extensive and continuous operation. After that, no further logging took place on the Backman property. Powers testified that following his logging operations from 1994 to 1996, the state required him to pull out the wooden bridges that were on the Lower and Middle Roads. To pull those bridges out, Powers testified that he brought in a backhoe, which he hauled in over Turtle Rock Road before unloading it at Respondent Lawrence's property. After that, Powers stated that he closed the Lower Road and then put in a culvert on the Middle Road so that he could continue to access the Backman property on that road. Then, about a year and a half after he

7

ended his logging operations, Powers built a skid trail off the Middle Road into the property. Powers testified that in the first year after his logging operations ended, he planted willows in the slide area on the Lower Road and would water them twice a week.

Powers also testified regarding the other uses for which he accessed the roads to the property:

> Powers: Well, we used to go berry picking up there quite a bit and had a lot of friends that like to hunt. They wanted to use it to hunt. They would ask permission. Mr. Marley used to ask permission to hunt it.
>
> Q: Did you go hunting up there?
>
> Powers: I did.
>
> Q: What else do you use the property for?
>
> Powers: Well, we was growing trees on it again. And we would monitor the growth and mortality.
>
> Q: How do you go about doing that?
>
> Powers: You have to walk around and look at it and see how healthy different areas are and what's going on.
>
> Q: So you drive on the roadways to get in there and then go walk on the property?
>
> Powers: Correct. Camp there a time or two.

In doing these activities, Powers stated that he visited the property from 1998 to 2004 an average of once per month.

The district court determined that Powers's use of the road and its extensions may have been of an open and notorious nature from 1994 to 1996 when Powers was logging, but after the 1996 logging operation ended, the use was not sufficient to put an owner of the servient tenant upon notice. The court determined that after 1996, Powers's "use of the Backman property was essentially restricted to hunting, camping and other activity similar to recreational use." Outside of Powers moving in the equipment to extend the skid trail for a two week period, the court did not see his other uses of the roads as varying from "any other member of the general public exploring the roadway system in the Syringa Creek drainage." Therefore, the court found Powers's use was not of a sufficient open and notorious nature to satisfy a prescriptive easement claim.

**b. Continuous and uninterrupted.**

Next, the Backmans assert that Powers's use of Turtle Rock Road and the three extensions that was open and notorious was also continuous and uninterrupted for the statutory period. Maintenance and repair of roads satisfies the element of being continuous and uninterrupted because repairing roads to facilitate the use of them indicates an intent to continue the use. *Stecklein v. Montgomery*, 98 Idaho 671, 674, 570 P.2d 1359, 1362 (1977) (citing to 3 *Powell on Real Property* § 413 (1977)).

The Backmans point to Powers's statement that he did a lot of "driving maintenance" on the roads and periodically graded them to support their contention that the use was continuous and uninterrupted. However, Powers was only referring to his work on the Upper Road before the north 20 acres were sold to Schrader when he mentioned maintenance and grading. Powers did later mention that he maintained the roads after he finished logging, but only referenced taking a "cat" in to open the Lower Road in 2004, figuring that the road had stabilized enough. Therefore, the installation of the culvert on the Middle Road and building of the skid trail were the only evidence presented of maintenance and repair of roads. The facts presented *supra* in the discussion of open and notorious were further used to demonstrate continuous and uninterrupted use.

The district court analyzed the facts discussed above, and found that after the logging operation ended, Powers's use of the roads was not of a sufficient nature to satisfy the continuous and uninterrupted element.

### c. Adverse and under a claim of right.

The Backmans further argue that Powers's use was adverse and under a claim of right because his testimony supports a finding that his use was without recognition of the right of Respondents. This Court has stated:

> A prescriptive right cannot be granted if the use of the servient tenement was by permission of its owner, because the use, by definition, was not adverse to the rights of the owner. Indeed, the rule is well established that no use can be considered adverse or ripen into a prescriptive right unless it constitutes an actual invasion of or infringement on the rights of the owner.

*Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006) (citations omitted). Thus, the nature of the use is adverse if "it runs contrary to the servient owner's claims to the property." *Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 303, 127 P.3d 196, 206 (quoting *Hodgins v. Sales*, 139 Idaho 225, 231, 76 P.3d 969, 975 (2003)). The state of mind of the users of the alleged easement is not controlling; instead, the focus is on the nature of their use. Moreover,

9

"mere inaction and passive acquiescence is not a sufficient basis for proving that the use of the claimed right was with the permission of the owner of the servient tenement." *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973). Finally, permissive use cannot ripen into a prescriptive easement. *Wood v. Hoglund*, 131 Idaho 700, 704, 963 P.2d 383, 387 (1998). If a use has commenced as permissive, a user must make some new and independent act that would put the owner of the servient property on notice that the use was no longer permissive. *Webster v. Magleby*, 98 Idaho 326, 327, 563 P.2d 50, 51 (1977).

The district court stated that "the threshold issue is whether there was a prescriptive right of access over Turtle Rock Road and its extensions when Powers purchased the one-hundred twenty (120) acres in 1994." Without such a previously existing prescriptive right, the court determined that Powers "did not perform acts sufficient to convert that previous permissive use into a hostile and adverse use under a claim of right."

Prior to the Backmans' purchase of the property, Section 8 was used solely for logging purposes and outdoor recreational activities. Defendants introduced evidence that, historically, logging operations obtained informal permission to cross properties. Counsel stated:

> The practice of the lumber company was to accommodate each other. When they logged they would seek permission from the neighboring logging companies and go across the property to log it, and that all evidence of any roads up until there was an actual development up here were all logging roads. And they were— people logged back and forth. After they logged they would wait 20 years before they logged again.

Defense witness Richard Creed, a retired civil engineer with the United States Forest Service, also testified that timber companies would allow access to each other's properties without recorded easements. Powers also testified that his approach was generally to try to get permission to cross properties when logging:

> Q: And that is what you do, isn't it? You ask landowners for permission and try to develop what I think you said was a rapport with them to access their property?
>
> Powers: Yes.

The district court determined that Powers's use was not adverse under a claim of right because, outside of his assumption that there was an existing prescriptive use established by previous loggers, Powers did not testify to any specific act he engaged in to establish a hostile and adverse use. The court saw Powers's actions as "nothing more than what logging companies had been doing for years, and was consistent with his assumption that a prescriptive easement

has been established by earlier logging operations." The court found that, without evidence establishing the previous uses had been adverse and under a claim of right, the use by previous loggers is presumably permissive; therefore, the court determined the Backmans did not establish the use had been adverse and under a claim of right.

### d. With the actual or imputed knowledge of the owner of the servient tenement.

The Backmans also assert that the owners in Section 7 had actual and imputed knowledge that Powers claimed a right to use the roads. The Backmans contend that Powers's use and maintenance of the roadways was sufficient to impute knowledge to the other owners.

Generally, where a claimant establishes open, notorious, continuous and uninterrupted use under a claim of right for the statutory period, knowledge of the owner may be presumed. *Hughes*, 142 Idaho at 481, 129 P.3d at 1230. However, there are special considerations regarding notice to the owner when the claimant's use of the subject property is shared with the general public:

> Where, as here, the same degree of use upon which the adverse claim is based has been exercised indiscriminately by the general public, individual acquisition of a prescriptive easement has generally been held impossible. In such a case, the claimant must perform some act whereby the adverse nature of the claim is clearly indicated to the owner of the servient estate.

*Id.* (quoting *Hall v. Strawn*, 108 Idaho 111, 112-13, 697 P.2d 451, 452-53 (Ct. App. 1985)). When the claimant and members of the general public are both using the land, "it would simply be unfair to impute knowledge to the landowner that the claimant is making an adverse claim." *Hughes*, 142 Idaho at 481, 129 P.3d at 1230.

Powers told Respondent Lawrence he would be bringing in equipment and Powers unloaded all of the heavy equipment he used for the road work and logging on Lawrence's property. Outside of that, there was little evidence presented showing that Powers's use provided the owners of the servient properties with actual or imputed knowledge. The district court found that other than moving equipment over the Middle Road to extend the skid trail in 1997 or 1998, all other use by Powers after his logging ended in 1996 was no different from the general use by the public. His use of the property was primarily for recreational activities after 1996, such as "berry picking, hunting, firewood gathering, and other recreational activities," and the district court found this was not enough to clearly indicate an adverse claim to Respondents.

11

### e. For the statutory period of five years.

The Backmans finally argue that Powers's use satisfied the elements for a prescriptive easement for the statutory period. The statutory period required to claim a prescriptive easement is five years. I.C. § 5-203. The district court did not find that Powers's use was open and notorious, continuous and uninterrupted, or adverse for a period of five years.

The district court made factual findings with regard to each element of the claim for a prescriptive easement and we find the district court's findings were supported by substantial and competent evidence based upon the testimony of the witnesses it heard. Therefore, we affirm the district court's denial of the Backmans' claim for a prescriptive easement.

### 2. The district court did not misapply presumptions that were not relevant to the claim.

The Backmans argue that the district court improperly applied presumptions of public use, use in common, and wild and unenclosed lands in its denial of their prescriptive easement claim. Instead, the Backmans assert the district court needed to simply focus on the five prescriptive easement elements. In *Hughes*, 142 Idaho at 481, 129 P.3d at 1230, this Court stated that courts should "streamline their analysis by focusing simply on whether the five prescriptive easement elements have been satisfied based on the facts before them" rather than applying presumptions. We reiterated that concept in *Beckstead v. Price*, 146 Idaho 57, __, 190 P.3d 876, 883 (2008).

While the district court here did utilize the "use in common" presumption discussed in *Beckstead*, it is not error for the court to use such rules as "an approach to determining whether the claimant had met the elements for a prescriptive easement by clear and convincing evidence." *Id.* at ___, 190 P.3d at 883. The district court here analyzed each of the five elements for a prescriptive easement claim, as this Court expressed a desire for in *Hughes* and *Beckstead*. As discussed *supra*, the court made factual findings with regard to each element and its findings were supported by substantial and competent evidence. Therefore, we affirm the district court's denial of the Backmans' prescriptive easement claim.

### D. Private condemnation

The Backmans also argue that the district court erred in denying their private condemnation claim because the court improperly focused on whether the intended use of the property was reasonably necessary, instead of whether access to the property was reasonably necessary to the public purpose. They contend that the only questions for the court to decide

were whether there was alternative access, the compensation amount, and the scope of the easement. This argument presupposes that the Backmans have a right to condemn a right-of-way to their property. They do not.

Idaho Code § 7-701 provides that the "right of eminent domain may be exercised in behalf of the following public uses: . . . Byroads, leading from highways to residences and farms." In addition, Article 1, § 14 of the Idaho Constitution defines the concept of public use a one "necessary to the complete development of the material resources of the state or the preservation of the health of the inhabitants." *See Cohen v. Larson*, 125 Idaho 82, 84, 867 P.2d 956, 958 (1993). We have found that removing timber from a property fits the definition of public use:

> [t]he timber of this state is a material resource and where that resource cannot be completely developed without the exercise of the power of eminent domain that power may be lawfully exercised. The fact that the use may be for private benefit is immaterial since the controlling question is whether the use is for the complete development of the material resources of the state.

*McKenney v. Anselmo*, 91 Idaho 118, 123, 416 P.2d 509, 514 (1966). Furthermore, we have found that "[t]he irrigation and reclamation of arid lands is a well recognized public use." *Canyon View Irrigation Co. v. Twin Falls Canal Co.*, 101 Idaho 604, 607, 619 P.2d 122, 125 (1980).

However, in *Cohen*, 125 Idaho 82, 867 P.2d 956, we held that Article 1, § 14 did not permit a person to condemn a right-of-way across another's property in order to provide access to a private residence. In *Cohen*, various homeowners and others sued to condemn an easement on an existing road across servient land to provide access to their homes. The district court granted their requested condemnation, but we reversed, holding that the Idaho Constitution does not permit condemnation for easements to private residences.

We stated, "This Court has never held that private individuals may take the property of other private individuals in order to enhance their purely private enjoyment of their property. The proposed use need not be strictly public, but it must at least benefit the public welfare or the economy *of the state*." *Id*. at 84, 867 P.2d at 958 (emphasis in original). With respect to the meaning of the phrase "the complete development of the material resources of the state," we said:

> We believe this provision in the Constitution was meant to enable those seeking to develop valuable resources, such as timber, minerals, or other products of

13

natural resources, from being thwarted by an inability to get access to these resources across the property of another. *The framers of our Constitution could not have intended that private individuals wishing to facilitate access to their homes should be able to condemn the land of their neighbors for this purpose.*

*Id*. at 85, 867 P.2d at 959 n.3 (emphasis added). We concluded, "We are persuaded that the Cohen group's use of their property is simply not a matter of public concern one way or the other; it is a purely private dispute and, as such, eminent domain is not the appropriate remedy." *Id*. at 85, 867 P.2d at 959.

The district court decided this case on the basis that the Backmans did not meet their burden of proving that such an easement was reasonably necessary because the court "would have to rely upon speculation and conjecture to conclude that the only physical way to build a road to reach the one-hundred twenty (120) acres would be to cross the east half of Section 7." We need not address the district court's discretionary factual findings because we affirm the district court's decision on the basis that the Backmans were not entitled to condemn a private right-of-way.

### E. Combination of three theories.

The Backmans contend that the district court erred in declining to combine easement by necessity, private condemnation, and/or prescriptive easement theories to provide them with access to their property. In addition to there being no legal basis to support this theory the district court found that even a combination of the theories would fail to provide the Backmans with access to their property and, therefore, it declined to do so. We affirm the district court's decision.

### F. Attorney fees.

The Backmans raised the issue of whether the district court erred in awarding costs to Respondents, but then failed to argue the issue or provide any support for their contention on appeal. Idaho Appellate Rule 35, which governs the content of briefs on appeal, requires that "[t]he argument . . . contain the contentions of the appellant with respect to the issues presented on appeal, *the reasons therefor*, *with citations to the authorities*, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6) (emphasis added). Furthermore, this Court has held that issues on appeal that are not supported by propositions of law or authority are deemed waived and will not be considered. *Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho

313, 323, 179 P.3d 276, 286 (2008). As such, this Court will not consider the Backmans' argument that the district court erred in awarding costs.

However, Respondents argue that they are entitled to attorney fees on appeal because the Backmans' appeal only invites the appellate court to second guess the trial court. They rely on *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006) ("An award of attorney fees is appropriate if the appellant simply invites the appellate court to second-guess the trial court on conflicting evidence") and *Gibson v. Ada County*, 142 Idaho 746, 761, 133 P.3d 1211, 1226 (2006) ("When . . . the appellate court is simply asked to second-guess factual determinations and is not asked to establish new legal standards, nor modify or clarify existing standards, the appeal has been brought frivolously, unreasonably and without foundation") for this proposition. But for the unity of title argument, the appeal does ask this Court to merely reassess the district court's findings of fact and conclusions of law. However, the unity of title argument does have a basis for a good faith legal argument and, therefore, we will not assess attorney fees.

### III. CONCLUSION

We affirm the district court's denial of the Backmans' claims for easement by necessity, prescriptive easement, and private condemnation. Respondents are awarded costs on appeal.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**