**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51549**

| | |
|---|---|
| BRYON RANDALL and TRACY RANDALL, husband and wife, | )<br>) **Filed: March 20, 2025** |
| | ) |
| Plaintiffs-Counterdefendants-Respondents, | ) **Melanie Gagnepain, Clerk** |
| | ) |
| v. | ) **THIS IS AN UNPUBLISHED**<br>) **OPINION AND SHALL NOT**<br>) **BE CITED AS AUTHORITY** |
| BRYAN EARL WOODDELL, individually, and as Trustee of THE TRIPLE-DOUBLES TRUST, | )<br>)<br>) |
| | ) |
| Defendant-Counterclaimant-Appellant. | )<br>)<br>) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment awarding a prescriptive easement, <u>affirmed</u>.

Neal Colborn, PLLC; Gary L. Neal, Boise, for appellants. Gary L. Neal argued.

Dinius & Associates, PLLC; Kevin E. Dinius, Nampa, for respondents. Kevin E. Dinius argued.

_____

LORELLO, Judge

Bryan Earl Wooddell (individually and as Trustee of The Triple-Doubles Trust) appeals from a judgment awarding a prescriptive easement. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case involves a property dispute between Wooddell and Bryon and Tracy Randall. The dispute is over a portion of a road (Hawk Haven Avenue) and surrounding property. The property at issue was originally owned by Development West Corporation. Development West divided a larger, unified parcel of land into two parcels--one owned by Wooddell and the other

1

owned by the Randalls. The Wooddell property borders the northern portion of the Randall property. Bordering the eastern portion of both properties is Hawk Haven Avenue. Both Wooddell and the Randalls use the paved and unpaved portion of Hawk Haven Avenue to access their respective properties. Additionally, the Randalls use the unpaved portion of Hawk Haven Avenue to access their barn, corral, arena, and the pasture on the northern side of their property.

Wooddell inspected the property prior to acquiring it in October 1996. At the time of Wooddell's inspection, the Randall property was owned by the first of the Randalls' predecessors.[1] The barn, fences, arena, and corral located on the Randall property today were all present at the time of Wooddell's inspection. These portions of the property have abutted Hawk Haven Avenue since the time of Wooddell's inspection. Additionally, the Randalls' barn, corral, arena, fencing, and the Wooddell property are only accessible via the unpaved portion of Hawk Haven Avenue. When the first of the Randalls' predecessors sold the Randall property in 1998, the barn and fencing remained on the Randall property. The second of the Randalls' predecessors made improvements to the barn, adding concrete floors and large, overhead barn doors which fronted the unpaved portion of Hawk Haven Avenue. These prior owners also built a new house on the southern part of the Randall property in 2002. Throughout these modifications and improvements, neither Development West nor Wooddell interfered with the prior owner's use of the unpaved portion of Hawk Haven Avenue.

In December 2011, the Randalls acquired their property from the second predecessor. The Randalls continued to use Hawk Haven Avenue to access their property from the east, including using the unpaved portion of the road to access their barn, corral, arena, and pasture. While the Randalls upgraded the fencing along the borders of their property, they kept the fencing line the same. Notably, when the Randalls were upgrading the fencing, Wooddell assisted the Randalls to ensure the existing fence line on the northeast corner of the Randall property remained the same. The Randalls placed their upgraded fence on the line Woodell showed them. The Randalls and

_____

[1] There are two prior owners of the Randall property who are relevant to this appeal. When Wooddell purchased his property in 1996, the Randall property was owned by Robert and Linda Bouy. In 1998, the Bouys sold the Randall property to Brent and Misty Evans. The Evans continued to live on the property until 2011.

2

Wooddell continued to use Hawk Haven Avenue as it had traditionally been used (i.e., to access their respective properties) without problems until 2019.

Sometime in 2019, the Randalls purchased a full-size dump truck that they parked on the unpaved portion of Hawk Haven Avenue. Around this same time, an acquaintance of the Randalls parked a pickup near the arena in a way that partially blocked Hawk Haven Avenue. The parked trucks led Wooddell to call the Ada County Highway District (ACHD) because Wooddell believed ACHD owned Hawk Haven Avenue. After calling ACHD to voice his concerns about the trucks, Wooddell discovered that ACHD did not own the unpaved portion of Hawk Haven Avenue. Through his attorney, Wooddell contacted the former president of Development West and offered to purchase whatever rights Development West had to the unpaved portion of Hawk Haven Avenue. According to Wooddell, the unpaved portion of the road was never conveyed and remained deeded to Development West. Wooddell further told Development West that he used the unpaved portion of Hawk Haven Avenue to access his property and noted that, while Development West had been administratively dissolved by the State of Idaho in 2014, it could nevertheless finalize its business. Wooddell attached two quitclaim deeds to his letter, purporting a transfer of Development West's interest in Hawk Haven Avenue to him.

Upon receipt of Wooddell's letter, the former president of Development West contacted the Randalls and asked if they wished to purchase rights to Hawk Haven Avenue. The Randalls responded by expressing their belief that they did not need to purchase Hawk Haven Avenue in order to continue using the unpaved portion of the road. Thereafter, Development West continued its negotiations with Wooddell. In September 2019, Wooddell obtained a quitclaim deed for the unpaved portion of Hawk Haven Avenue and the surrounding property from Development West. Wooddell paid $2,000 to Development West for "whatever interest Development West had in the unpaved portion" of Hawk Haven Avenue. In January 2020, Wooddell quitclaimed his deed for Hawk Haven Avenue to The Triple-Doubles Trust.

Weeks later, Wooddell sent a letter to the Randalls demanding they "comply with the law consistent with Wooddell's ownership interest in his property." Wooddell advised the Randalls that they had "no right or permission to park or store any of [their] vehicles, equipment or other materials on Wooddell's property" and that the Randalls could no longer utilize Wooddell's property for any reason. Additionally, Wooddell asserted the Randalls' fencing and barn were

3

encroaching on his property and demanded the "fence, personal property, and accessory barn structure . . . be removed or relocated onto [the Randalls'] property as indicated by the recorded survey markers." Wooddell gave the Randalls approximately three months to comply with his demands and offered a series of "concessions in good faith." If the Randalls failed to comply, Wooddell threatened to remove the Randalls' property at their expense, seek enforcement under the criminal trespass statutes and pursue any additional litigation deemed necessary. Wooddell also installed No Trespassing signs around Hawk Haven Avenue, as well as signs warning that unauthorized vehicles would be towed.

Thereafter, the Randalls filed suit requesting the district court enter judgment declaring Wooddell took title of Hawk Haven Avenue subject to an easement permitting the Randalls to use the unpaved portion of Hawk Haven Avenue to access their property. Wooddell counterclaimed and requested the district court quiet title to Hawk Haven Avenue. Wooddell also alleged a claim for trespass against the Randalls. Wooddell moved for summary judgment and, after a hearing, the district court granted the motion in part and denied it in part. In that decision, the district court concluded that there remained two triable issues: (1) whether the Randalls had established a prescriptive easement over a portion of Hawk Haven Avenue, including the unpaved portion of the road and a portion of land under the Randalls' barn and pasture fencing; and (2) whether Wooddell had established his claim for trespass. Thereafter, the matter proceeded to a court trial.

After reviewing the evidence presented and the testimony of the witnesses at trial, the district court found that the Randalls established a prescriptive easement over the unpaved portion of Hawk Haven Avenue and the surrounding property.[2] The district court also awarded the Randalls costs as the prevailing party. Wooddell appeals.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to

---

[2]     Following the trial, the district court dismissed Wooddell's claim for trespass after it concluded that the Randalls had a prescriptive easement over the disputed portion of Hawk Haven Avenue. Neither party challenges the district court's dismissal of Wooddell's trespass claim.

ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). This Court's free review of a trial court's conclusions of law includes whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement. *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009).

Where there is conflicting evidence, it is within the trial court's purview to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

## III.

## ANALYSIS

Wooddell argues the district court erred in finding that the Randalls had a prescriptive easement because, Wooddell contends, the district court's findings of fact and conclusions of law are not supported by substantial evidence. Wooddell also asserts that the district court erred in awarding costs to the Randalls. In response, the Randalls contend the record and applicable law support both the district court's finding of a prescriptive easement and the award of costs. We hold that Wooddell has failed to show the district court erred in granting the Randalls a prescriptive easement and awarding costs.

5

### A.    Prescriptive Easement

An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Latvala v. Green Enters., Inc.*, 168 Idaho 686, 696, 485 P.3d 1129, 1139 (2021); *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). The party seeking to establish a prescriptive easement has the burden of showing, by clear and convincing evidence, that use of the subject property was: (1) open and notorious; (2) continuous and uninterrupted; (3) adverse and under a claim of right; (4) with actual or imputed knowledge of the owner of the servient tenement; and (5) for the statutory period. *Latvala*, 168 Idaho at 696, 485 P.3d at 1139. Each element is essential to the claim, and the trial court must make findings relevant to each element in order to sustain a judgment on appeal. *Id.*

The district court found that, based on the evidence presented, the Randalls established a prescriptive easement over both the unpaved portion of Hawk Haven Avenue and the surrounding property. The district court made factual findings on all five elements of a prescriptive easement, each of which Wooddell challenges on appeal. We address each challenge below.

#### 1.    Open and notorious

The prescriptive use of property must be open and notorious so that a reasonable person would have discovered its occurrence. *Latvala*, 168 Idaho at 696, 485 P.3d at 1139; *Backman*, 147 Idaho at 396, 210 P.3d at 81. This requirement provides the owner of the servient tenement knowledge and the opportunity to assert a claimed right against the development of a prescriptive easement. *Latvala*, 168 Idaho at 696, 485 P.3d at 1139. As such, the open and notorious use must rise to the level reasonably expected to provide notice of the adverse use to a servient landowner maintaining a reasonable degree of supervision over the property. *Id.* at 696-97, 485 P.3d at 1139-40.

The district court found that the use of Hawk Haven Avenue adjacent to the Randall property, including the unpaved portion of the road, was open and notorious. According to the district court, the Randalls and the prior owners "have used the road continuously to access the property . . . including the barn, the arena and the pasture area." The large barn doors that face Hawk Haven Avenue "are directly accessed from the road," and the district court found that Wooddell "had actual knowledge of the use of the road by the prior residents of [the Randall property] since September 1996." The district court further found that the use of the road by the

6

Randalls and the prior owners appeared to have been known by Development West as evidenced by Development West's former president contacting the Randalls when Wooddell offered to buy whatever rights Development West had in Hawk Haven Avenue. As noted by the district court, Development West owned the road and property at issue from 1974 until September 2019. As such, the district court determined that the scope and use by the Randalls and their predecessors rose to the level that, had Development West "maintained reasonable supervision of its land, [it] would have discovered that use, particularly because the barn and the fences covered part of the land that Wooddell now claims he obtained from Development West."

Wooddell contends the district court's finding that the use of Hawk Haven Avenue was open and notorious is not supported by substantial and competent evidence. In support of his argument, Wooddell cites Byron Randall's testimony at trial that he "purchased a dump truck in 2019 and began parking it on the unpaved portion of" Hawk Haven Avenue. Wooddell takes issue with the lack of testimony regarding whether Byron Randall "had parked any vehicles on the unpaved portion of [Hawk Haven Avenue] prior to 2019." However, whether Byron Randall parked vehicles on the unpaved portion of Hawk Haven Avenue prior to 2019 does not affect the district court's analysis as to whether the use of the road and surrounding property was open and notorious because the open and notorious use by the Randalls and the preceding owners was discoverable by Development West before 2019. The prescriptive use necessary to create an easement is against the servient estate not against individual owners. In this case, this includes the open and notorious use of Hawk Haven Avenue during the time it was owned by Development West.

Wooddell also cites testimony from a prior owner of the Randall property and highlights her subjective belief that she did not act adversely "at any time to Wooddell's interests in the property" and that she "never parked any vehicles on the unpaved portion of" Hawk Haven Avenue. That one of the prior owners of the Randall property did not believe she acted adversely and did not park any vehicles on the unpaved portion of Hawk Haven Avenue does not alter the district court's findings of fact pertaining to the open and notorious use of the property. Moreover, Wooddell acknowledged the open and notorious use of Hawk Haven Avenue. At trial, Wooddell testified that, before he purchased Hawk Haven Avenue from Development West in 2019, he observed other people using the road, including the prior owners of the Randall property.

7

Wooddell has failed to show error in the district court's findings regarding the open and notorious use of Hawk Haven Avenue. The district court's finding that the prescriptive use of Hawk Haven Avenue, including the unpaved portion of the road and the surrounding property, was open and notorious is supported by substantial and competent evidence.

## 2. Continuous and uninterrupted

It is generally accepted that the "continuous and uninterrupted" element does not require daily or monthly use. *Latvala*, 168 Idaho at 697, 485 P.3d at 1140. Instead, the acquisition of a prescriptive easement requires continuous use according to the nature of the use and the needs of the claimant. *Beckstead v. Price*, 146 Idaho 57, 63 n.1, 190 P.3d 876, 882 n.1 (2008).

At trial, Wooddell testified that, prior to purchasing his property in 1996, he inspected the property. During the inspection, Wooddell observed the prior owners of the Randall property used Hawk Haven Avenue "in the same manner as the Randalls." Specifically, Wooddell testified that the Randalls and one of the prior owners used the road and the barn in the same manner. The district court found that, despite various improvements in terms of materials and height, "the fencing along the side of S. Hawk Haven Avenue has been in the same place since 1996." Additionally, the district court noted Wooddell's testimony that "the barn and fencing along the S. Hawk Haven Avenue property was in place before he purchased [his] property in 1996." The district court also determined the oldest photos of Hawk Haven Avenue submitted into evidence showed the barn in its present location. Accordingly, the district court found, by clear and convincing evidence, that the use of Hawk Haven Avenue by the Randalls and their predecessors, "including the unpaved portion to access the barn, the arena, and the pasture on the east side of" the Randall property was continuous and uninterrupted.

Wooddell argues the evidence was insufficient to support the district court's finding of continuous and uninterrupted use of Hawk Haven Avenue because Byron Randall testified at trial that he did not perform any maintenance work on the road. While it is true that maintaining and repairing property in order to facilitate further enjoyment of its use affords good grounds for an inference of the required "continuousness," *Stecklein v. Montgomery*, 98 Idaho 671, 674, 570 P.2d 1359, 1362 (1977), that is not the only way to satisfy the continuous and uninterrupted element. Moreover, Byron Randall testified that he "probably drug" Hawk Haven Avenue "a few times" with a tractor in order to "keep the bumps down" and "keep it smooth." Additionally, Wooddell

does not dispute the district court's factual findings on the Randalls' use of Hawk Haven Avenue for this element. As such, Wooddell has failed to show the district court erred when it found that the use of Hawk Haven Avenue and the surrounding property by the Randalls and their predecessors was continuous and uninterrupted. The district court's findings on this element are supported by substantial and competent evidence.

### 3. Adverse and under a claim of right

A party's use is adverse if it runs contrary to the servient owner's claims to the property. *Latvala*, 168 Idaho at 697, 485 P.3d at 1140. The state of mind of the users of the alleged easement is not controlling; instead, the focus is on the nature of their use. *Id.*; *Backman*, 147 Idaho at 397-98, 210 P.3d at 82-83. When a claimant presents proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, even without evidence of how the use began, the claimant raises a presumption that the use was adverse and under a claim of right. *Latvala*, 168 Idaho at 697-98, 485 P.3d at 1140-41. The burden of proof then shifts to the owner of the servient tenement to show that the claimant's use was permissive, or by virtue of a license, contract, or agreement. *Id.* at 698, 485 P.3d at 1141.

The district court determined it was not clear exactly when the Randalls and the prior owners of the Randall property began using Hawk Haven Avenue to access the barn and the rest of the property prior to 1996. However, the district court found that clear and convincing evidence established that "those residents have been using [Hawk Haven Avenue] openly, notoriously, continuously and in an uninterrupted fashion since October 1996." As such, the district court presumed the Randalls' use was adverse and under a claim of right and shifted the burden to Wooddell to show that the use was permissive or based on a license, contract, or agreement. The district court determined that Wooddell failed to meet his burden. The district court noted that "the issue is not the state of mind of the Randalls or any prior owner of the property but the nature of their use." According to the district court, Hawk Haven Avenue and the surrounding property "is improved property with a barn, fencing, the keeping of livestock and the growing of hay with access to that pasture from the gates adjacent to the road." The district court determined that "fencing out other users and placing a barn on the land which Wooddell now claims is his exclusively as a result of a quitclaim deed he obtained in September 2019" constituted an adverse use of the property made under a claim of right.

9

Wooddell contends the "overwhelming evidence demonstrates that the Randalls did not establish that the use of [Hawk Haven Avenue] was adverse and under a claim of right." In support of his argument, Wooddell cites testimony from a prior owner of the Randall property in which she asserts her belief that Hawk Haven Avenue and the surrounding property were owned by Wooddell. Wooddell's assertion that the district court erred by disregarding this testimony is not supported by the record. Contrary to Wooddell's argument, the district court considered the prior owner's testimony and specifically found that "the issue is not the state of mind of the Randalls or any prior owner of the property but the nature of their use." The district court's finding is supported by case law. *See Latvala*, 168 Idaho at 697, 485 P.3d at 1140 (holding that the state of mind of the users of the alleged easement is not controlling; instead, the focus is on the nature of their use). Wooddell does not dispute the remainder of the district court's findings pertaining to this element. Accordingly, Wooddell has failed to show the district court erred when it found that the Randalls' use of Hawk Haven Avenue and the surrounding property was adverse and under a claim of right. The district court's findings are supported by substantial and competent evidence.

### 4. Actual or imputed knowledge of the owner of the servient tenement

Generally, where a claimant establishes open, notorious, continuous and uninterrupted use under a claim of right for the statutory period, knowledge of the owner may be presumed. *Backman*, 147 Idaho at 398, 210 P.3d at 83. However, there are special considerations regarding notice to the owner of the servient tenement when the claimant's use of the subject property is shared with the general public. *Hughes v. Fisher*, 142 Idaho 474, 481, 129 P.3d 1223, 1230 (2006). In cases where the same degree of use upon which the adverse claim is based has been exercised indiscriminately by the general public, acquiring a prescriptive easement has generally been held impossible. *Id*. In such a case, the claimant must perform some act clearly indicating the adverse nature of the claim to the owner of the servient estate. *Id*. When the claimant is using the land along with members of the general public, it would be unfair to impute knowledge to the landowner that the claimant is making an adverse claim. *Backman*, 147 Idaho at 399, 210 P.3d at 84; *Hughes*, 142 Idaho at 481, 129 P.3d at 1230.

The district court noted that the barn and fencing on Hawk Haven Avenue and the surrounding property "have been in the same location for years and were definitely in place in 1996." Additionally, the district court found that the regular use of Hawk Haven Avenue by the

10

Randalls and their predecessors "included using it to ride their horses and access the pasture between the barn and the end of the property line." The district court determined that the use "was frequent enough to have put Development West on notice." The district court also found that Wooddell was on notice regarding the Randalls' use of the road and surrounding property, as shown by Woodell's assistance in establishing the prior property markers when Byron Randall made improvements to the then-existing fence line. According to the district court, Wooddell helped work on the fence line to ensure Byron Randall "would follow the same line." The district court found it reasonable to infer that "it was the original developer, Development West, who placed" the original property markers "since that was the entity that split the unified parcel into the two that currently exist." Because "the barn, the fence line and the use of [Hawk Haven Avenue] to access the pasture was open and readily observable and adverse to someone claiming ownership," the district court found "Development West knew or should have known of" the Randalls' use of the road and surrounding property. According to the district court, "it strains credulity to argue that placing a barn and fence line where it is and has been since 1996 at the latest is not adverse to someone who claims that it was their property."

On appeal, Wooddell argues the evidence at trial showed that "the public, including delivery men, farmers, water people, and" people needing to access their farms north of the Wooddell property, all used Hawk Haven Avenue. Wooddell asserts that the Randalls failed to show the servient tenement had actual or imputed knowledge of their use of Hawk Haven Avenue and the surrounding property. We disagree. Although Wooddell testified at trial that some members of the general public also used Hawk Haven Avenue for a variety of reasons, their uses were not as extensive as the Randalls' use. For example, while Wooddell testified people often used the road "to access the northern properties for farming," the Randalls used the road to access the barn that has been on their property since 1996. Any public use was not to the same degree of use by the Randalls and their predecessors. The Randalls also made improvements to the barn and maintained and repaired the fencing surrounding the property. Wooddell's claim that the Randalls failed to establish actual or imputed knowledge is unpersuasive given that he personally helped Byron Randall replace the fence line. We agree with the district court that the Randalls' acts were sufficient to signify the adverse nature of their claim to both Development West and Wooddell. Accordingly, Wooddell has failed to show the district court erred when it determined Development

11

West knew or should have known of the Randalls' use of Hawk Haven Avenue and the surrounding property. The district court's findings related to this element are supported by substantial and competent evidence.

### 5. Statutory period

In 2006, I.C. § 5-203 was amended to extend the statutory time period required for establishing a prescriptive easement from five years to twenty years. *Latvala*, 168 Idaho at 699, 485 P.3d at 1141. However, the twenty-year timeframe does not apply to an easement by prescription acquired prior to the amendment. *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 420 n.2, 283 P.3d 728, 737 n.2 (2012). "Tacking" is the concept that allows the current owner of the subject property to combine his or her prescriptive use with that of a previous owner in order to satisfy the statutory requirement. *Hodgins*, 139 Idaho at 230, 76 P.3d at 974. Accordingly, a claimant who has not owned the subject property for the statutory period may rely on the adverse use by the claimant's predecessors for the prescriptive period or the claimant may combine such predecessor's use with the claimant's own use to establish the requisite statutory period. *Id*.

The district court found that the Randalls and their predecessors used Hawk Haven Avenue, including the unpaved portion of the road, to use the barn and access the property and pasture dating back to 1996. Additionally, the district court noted that the Randalls "improved and maintained the fences" surrounding Hawk Haven Avenue following the purchase of their property. Because the district court found these uses by the Randalls and their predecessors dated back to 1996, the district court applied the five-year statutory time period to the Randalls' prescriptive easement claim. The district court determined that "an easement for the right to use the land of Development West to access the barn, the gates and [the Randall property], including the unpaved portion of the road has existed since 1996." Thus, the district court found that the Randalls satisfied the five-year statutory requirement for a prescriptive easement.

Wooddell argues that the Randalls "failed to establish the time period necessary to claim a prescriptive easement." Wooddell asserts that, because he purchased Hawk Haven Avenue and the surrounding property from Development West in 2019 and because "no evidence was presented by the Randalls that their use of [Hawk Haven Avenue] was open and notorious prior to 2019," the district court erred in finding that the statutory period required for establishing a

prescriptive easement had been satisfied. Contrary to Wooddell's argument, evidence was presented at trial showing that the Randalls' and their predecessors' use of Hawk Haven Avenue was open and notorious. Moreover, that Wooddell purchased Hawk Haven Avenue and the surrounding property from Development West in 2019 does not mean the Randalls were required to establish their use of the road and property under the twenty-year statutory period. As stated above, the Randalls were permitted to rely on and combine the uses of their predecessors with their own in order to establish the statutory period. *See Hodgins*, 139 Idaho at 230, 76 P.3d at 974. Wooddell has failed to show error in the district court's findings. Substantial evidence supports the district court's finding that the Randalls satisfied the time period required for establishing a prescriptive easement.

### 6. Idaho laws disfavor prescriptive easements

The Idaho Supreme Court has held that "courts should closely scrutinize and limit rights obtained through prescription because prescription acts as a penalty against the servient land owner." *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 679, 339 P.3d 557, 564 (2014). In other words, Idaho law disfavors private prescriptive easements. *Id*.; *Backman*, 147 Idaho at 396, 210 P.3d at 81; *see Elder v. Nw. Timber Co.*, 101 Idaho 356, 358, 613 P.2d 367, 369 (1980); *Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977).

Wooddell argues the district court erred because it failed to afford him "the inference created as a result of easements by prescription being disfavored under Idaho law." However, Wooddell's argument is belied by the record. The district court acknowledged and began its analysis by noting that "prescriptive easements are not favored under Idaho law." Though Wooddell contends the district court failed to afford him the inferences created by Idaho laws disfavoring prescriptive easements, he has failed to offer or specify what type of inferences he was entitled to. Wooddell has failed to show error.

Substantial and competent evidence supports the district court's findings as to the prescriptive easement elements. Accordingly, we hold that Wooddell has failed to show the district court erred when it determined the Randalls established a prescriptive easement over the unpaved portion of Hawk Haven Avenue and the surrounding property.

13

**B.      District Court's Award of Costs**

The district court found the Randalls "prevailed on their central claim, which was that they had the legal right to use S. Hawk Haven Avenue including the unpaved portion on the eastern side of their property." The district court also concluded the Randalls prevailed overall. As a result, the district court awarded the Randalls "their costs of right in the amount of $1,101.01." Wooddell argues that the district court's cost award should be reversed because its decision awarding the Randalls a prescriptive easement is not supported by substantial and competent evidence. Because we have concluded that the district court's finding that the Randalls established a prescriptive easement over the unpaved portions of Hawk Haven Avenue is supported by substantial and competent evidence, Wooddell's challenge to the cost award necessarily fails.

**C.      Attorney Fees and Costs on Appeal**

The Randalls argue they are entitled to an award of attorney fees and costs on appeal because Wooddell's arguments simply ask this Court "to second guess the district court." An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). That standard for an award of attorney fees is satisfied in this case. Accordingly, the Randalls are awarded attorney fees on appeal.[3]

**IV.**

**CONCLUSION**

Substantial and competent evidence supports the district court's decisions awarding the Randalls a prescriptive easement and costs. Wooddell has failed to show error in the district court's decisions. Accordingly, the judgment awarding the Randalls a prescriptive easement and costs is affirmed. Costs and attorney fees are awarded to the Randalls on appeal as the prevailing parties.

Judge HUSKEY and Judge TRIBE, **CONCUR**.

---

[3]      On appeal, Wooddell also claims he is entitled to an award of attorney fees and costs. However, Wooddell's argument fails because he is not the prevailing party.