# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 52561

CRYSTAL HOMESTEAD ESTATES, LLC, a
Utah limited liability company,

    Plaintiff-Counterdefendant-
Respondent,

v.

THAT PIECE OF PROPERTY MORE
FULLY DESCRIBED AS FOLLOWS:
PARCEL NO. RPR4225004118 and PARCEL
NO. RPR4225004119, Bannock County, Idaho;
MATT SCHIFFMAN, LAURA SCHIFFMAN,
MICHAEL SCHIFFMAN, and LESLIE
SCHIFFMAN,

    Defendants-Counterclaimants-
Appellants

_____

THAT PIECE OF PROPERTY MORE FULLY
DESCRIBED AS FOLLOWS: PARCEL NO.
RPR4225004118 and PARCEL NO.
RPR4225004119, Bannock County, Idaho,
MATT SCHIFFMAN, LAURA SCHIFFMAN,
MICHAEL SCHIFFMAN, and LESLIE
SCHIFFMAN,

    Third Party Plaintiffs,

v.

ROGER S. JOHNSON and KAYE JOHNSON,

    Third Party Defendants.

Twin Falls, November 2025 Term

Opinion Filed: April 1, 2026

Melanie Gagnepain, Clerk

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Robert C. Naftz, District Judge.

The judgment of the district court is <u>vacated</u>, the order granting summary judgment is <u>reversed</u>, and the case is <u>remanded</u>.

Merrill & Merrill, Chtd., Pocatello, for Appellants That Piece of Property More Fully Described as Follows: Parcel No. RPR4225004118 and Parcel No.

RPR4225004119, Matt Schiffman, Laura Schiffman, Michael Schiffman and Leslie Schiffman. Kent A. Higgins argued.

Echo Hawk & Olsen, PLLC, Pocatello, for Respondent Crystal Homestead Estates LLC. Donald A. Sonnefeld argued.

———————————

MEYER, Justice.

This appeal arises from a quiet title action involving access rights claimed across two parcels of land in Bannock County, Idaho. Crystal Homestead Estates, LLC (CHE) sought to establish easements across a parcel of property owned by Matthew and Laura Schiffman and another parcel owned by Michael and Leslie Schiffman (collectively the Schiffmans). The district court granted summary judgment in favor of CHE on its claim of implied easements by prior use over both parcels. In doing so, the court considered a declaration submitted by CHE, did not rely on affidavits submitted by the Schiffmans, and treated the remaining record as undisputed. Based on the record, the court concluded that CHE established the elements of implied easements by prior use as a matter of law.

On appeal, the Schiffmans challenge the district court's evidentiary rulings and its order granting summary judgment. They argue that the court erred by striking admissible evidence, considering unsupported statements, and concluding that CHE established apparent continuous use long enough before severance to support an implied easement. We reverse the district court's order granting summary judgment in CHE's favor because CHE did not establish apparent continuous use long enough before severance to support implied easements by prior use.

## I. FACTUAL AND PROCEDURAL BACKGROUND

CHE is a Utah limited liability company that owns Crystal Farm, a parcel of land located in Bannock County, Idaho, near Lava Hot Springs. CHE acquired Crystal Farm in 2022, when five siblings, all members of CHE, transferred their interests in the property to the company by quitclaim deed. Each sibling had previously received an undivided interest in Crystal Farm as a gift from their parents, Vernon F. Parent and Elese Parent. The Parents purchased Crystal Farm in 1981 and leased the property to Darrel Christensen for agricultural use.

Before the Parents' ownership, Crystal Farm was owned by the Hall family from 1965 to 1981. During that period, the Hall family used roads located on the properties now owned by the Schiffmans to access Crystal Farm. The Hall family acquired Crystal Farm from Ellis D. Willmore,

who purchased the property from the State of Idaho on October 29, 1948. The State had owned Crystal Farm beginning in November 1924.

The Schiffmans own two parcels of property located immediately south of Crystal Farm (collectively the Schiffman Properties). Matthew and Laura Schiffman own one parcel, and Michael and Leslie Schiffman own the other. The Schiffmans purchased their respective parcels in 1983 from Roger Johnson and his wife. Johnson's family acquired the Schiffman Properties from the State of Idaho. The parties agree that the State of Idaho was once the common owner of both Crystal Farm and the Schiffman Properties.

CHE filed a verified complaint seeking to quiet title to easements across the Schiffman Properties. CHE alleged an easement via a western access road crossing Matthew and Laura Schiffman's parcel and an easement over an eastern access road crossing Michael and Leslie Schiffman's parcel. According to CHE, Crystal Farm is landlocked and may be accessed only by unimproved roads that cross the Schiffman Properties from South Crystal Springs Road. CHE asserted three alternative theories in support of its claim: an implied easement by prior use, an easement by necessity, and a prescriptive easement.

The Schiffmans filed an answer and counterclaim disputing CHE's assertion that Crystal Farm is landlocked. They also filed a third-party complaint against Johnson, alleging breach of warranties of title. Shortly after the Schiffmans filed their responsive pleadings, CHE moved for summary judgment on all three easement theories. In support of the motion, CHE submitted a declaration from Johnson, the prior owner of the Schiffman Properties.

According to Johnson's declaration, his family purchased the Schiffman Properties from the State in 1946. However, Johnson testified that, "[i]n 1952 [his] family realized that the deed had not been properly recorded so they took steps to get a proper deed from the [S]tate[.]" This deed was subsequently recorded on July 25, 1952. In addition, Johnson testified that at the time his family purchased the Schiffman Properties, "there were two roads that gave access from Crystal Springs Road to the Crystal Property through our property." He testified that "[i]t was well known that the owners of Crystal Property had every right and authority to access their Crystal Property through our property[,]" and that "[s]ince [his family] originally purchased the land . . . in 1946, the roads to access the Crystal Property are the same roads that have been used, without interruption, from 1946 to current."

3

The Schiffmans opposed CHE's motion for summary judgment. They argued, in part, that CHE failed to establish an implied easement by prior use. They asserted that Johnson's competence was a question of fact based on the affidavit of his daughter, Alayne Cobbley, who stated that Johnson "is not mentally competent to testify from memory as to any legal matter and he hasn't been for at least two years." The Schiffmans also argued that Johnson's declaration should be stricken because it contained conclusory statements and lacked foundation. In addition, they asserted that any easements had been extinguished by adverse possession, that the statute of limitations barred CHE's claims, and that the Schiffmans were good-faith purchasers who took priority over any claimed easement.

In support of their opposition, the Schiffmans also submitted substantively similar affidavits from Matthew and Michael Schiffman. The affidavits stated that their warranty deed "covenanted that the property was free of all encumbrances, except covenants, conditions and restrictions and easements of record." The brothers stated that, at the time of their purchase, "the property now owned by [CHE]" was "not being farmed." Each described the alleged roadways not as roads, but as minimal trails, specifically "single-vehicle dirt path[s]" across land that is "sagebrush," "wild," "undeveloped," "unimproved," and "unenclosed."

Matthew and Michael noted that the path is "occasionally" driven by recreational users but "very infrequent[ly]." Both denied that the trails could have supported agricultural operations. Matthew stated that "the trail could not have been used for agricultural purposes" and that it was "certainly impossible to get harvest equipment between the sagebrush or through the gate." Michael similarly stated that the trail "would not accommodate agricultural equipment, such as discs, planters, combines, etc." Both affidavits also stated that if cattle were moved on Crystal Farm to graze, "the cattle would have been brought in by cowboys on horseback" or "herders" and "could not have been driven . . . by truck." Matthew's affidavit stated that "[u]se, if any . . . has not been continuous," "has not been adverse to my ownership," and "has not been . . . under a claim of right." Michael mirrored the assertions and stated that use "has not been continuous," "has not been adverse to my ownership," and "has not been without my permission or by any assertion . . . that [CHE] was claiming a right to cross my property."

Both affidavits further identified Mullen Canyon Road as "a well developed road which has been partially maintained by Bannock County." Michael similarly stated that he had "personally driven Mullen Canyon Road . . . all the way from Highway 30 to the Crystal

4

Homestead Estates property," and that it was "a well maintained road." Both explained that Crystal Farm is therefore not landlocked.

Matthew's affidavit diverged from Michael's affidavit by focusing on Christensen's alleged trail modification by "widen[ing] the west access [t]rail with a dozer blade." Matthew's affidavit disputed Christensen's allegation; instead contending that Christensen "had only completed about fifty yards when [Matthew] noticed that the [t]rail was being torn up." Matthew explained that his attorney sent "a cease and desist letter stating [Christensen] had no right to do so," after which "no further modifications were made . . . ."

Michael, by contrast, emphasized that he "placed [his] children's swing set across the trail," and that it "remained there for nine years." He further stated, "More recently, I have been parking my truck on the trail." Michael recounted that when Kevan Andrus, who Michael believed was a lessee of Crystal Farm, questioned a "legal right-of-way," Michael responded that "there was no legal right-of-way, that it was [his] property," after which Andrus "asked [him] for permission" to use the trail. Michael also emphasized that his "home is immediately adjacent to the [t]rail, which gives [him] first-hand knowledge of the use of the [t]rail whenever [he is] home."

CHE and the Schiffmans each filed motions to strike the opposing side's affidavits and declarations. CHE moved to strike the affidavits submitted by Matthew, Michael, and Cobbley, arguing that the Schiffman affidavits contained conclusory assertions, hearsay, and statements not based on personal knowledge, and that Cobbley lacked personal knowledge and foundation to testify regarding Johnson's competence. The Schiffmans moved to strike portions of declarations submitted by CHE, including portions of a declaration filed by CHE's counsel, Sonnefeld, which stated:

> Attached hereto as Exhibit B is a true copy of a notarized written statement signed by Roger Johnson.
>
> . . . A copy of the statement was provided to Bob Johnson on December 20, 2023, to verify the content of the Declaration of Roger Johnson, which was later signed and filed in this case.
>
> . . . On information and belief, Bob Johnson is the son of Roger Johnson.

The district court granted CHE's motion to strike the affidavits submitted by the Schiffmans and denied the Schiffmans' motions to strike. In addressing the Sonnefeld declaration, the court declined to strike the paragraphs describing Johnson's notarized statement. The court noted that Johnson's notarized statement contained the same relevant facts as Johnson's

5

declaration, was dated before Johnson moved in with his daughter, and was later provided to Johnson's son for verification. Having rejected the challenge to Johnson's competence, the court treated the notarized statement as corroborative support for Johnson's declaration.

On CHE's motion for summary judgment, the district court concluded that the remaining undisputed evidence established that an implied easement existed across the Schiffman Properties along the western and eastern access roads connecting Crystal Springs Road to Crystal Farm. Because that conclusion resolved the case, the court did not address CHE's alternative easement theories. The court granted summary judgment in favor of CHE, quieted title to the easements, and dismissed the Schiffmans' counterclaim.

The Schiffmans moved for reconsideration. The district court denied the motion, stating that the Schiffmans had offered no new evidence or authority, and that further review confirmed the absence of a material issue of fact regarding an implied easement by prior use. The Schiffmans timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in striking the entirety of Cobbley's affidavit?
2. Did the district court err in considering Johnson's declaration?
3. Did the district court err in striking the entirety of Matthew's and Michael's affidavits?
4. Did the district court err in granting summary judgment in favor of CHE?
5. Is either party entitled to attorney fees on appeal?

## III. STANDARDS OF REVIEW

"The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter . . . ." *Nesser v. Inland Empire Paper Co.*, 170 Idaho 692, 696, 516 P.3d 562, 566 (2022). We review the district court's decision regarding "the admissibility of testimony" under our well-known abuse of discretion standard. *Id.* at 696–97, 516 P.3d at 566–67 (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012)). Under this standard, this Court considers whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

6

We exercise de novo review of a court's grant of summary judgment, and the "standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Bronco Elite Arts & Athletics, LLC v. 106 Garden City, LLC*, 172 Idaho 506, 513, 534 P.3d 558, 565 (2023) (quoting *Stonebrook Constr., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). To oppose summary judgment, the party must support the assertion that a material fact is genuinely disputed by either "citing to . . . depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." I.R.C.P. 56(c)(1)(A)–(B). Courts "may consider other materials in the record." I.R.C.P. 56(c)(3). "All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted." *Schriver v. Raptosh*, 174 Idaho 498, 506, 557 P.3d 398, 406 (2024) (quoting *E. Lizard Butte Water Corp. v. Howell*, 122 Idaho 679, 681, 837 P.2d 805, 807 (1992)).

Finally, this Court exercises free review over a trial court's conclusions of law, including the question "of whether the facts found . . . are sufficient to satisfy the legal requirements for the existence of an implied easement . . . ." *Latvala v. Green Enters., Inc.*, 168 Idaho 686, 695, 485 P.3d 1129, 1138 (2021) (quoting *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)).

### IV.   ANALYSIS

The Schiffmans challenge both the district court's evidentiary rulings and its decision to grant summary judgment in CHE's favor. The district court's summary judgment decision rested on three related evidentiary determinations. First, the court granted CHE's motion to strike the affidavit of Cobbley, which the Schiffmans offered to challenge Johnson's competence. Second, the court considered and relied on Johnson's declaration as undisputed evidence establishing the elements of an implied easement by prior use. Third, the court granted CHE's motion to strike the affidavits of Matthew and Michael in their entirety, including paragraphs that set out background facts supported by attached deeds.

7

We conclude that the district court did not err in striking Cobbley's affidavit because her testimony contained opinions regarding Johnson's medical condition and competency without a proper foundation. We further conclude that the district court erred in relying on portions of Johnson's declaration that asserted facts without stating sufficient foundation showing how he had personal knowledge of those facts. We also conclude that the court erred in striking the entirety of Matthew's and Michael's affidavits.

The district court treated the remaining record as undisputed and granted summary judgment on CHE's implied easement by prior use claim. However, as we explain below, CHE did not carry its burden to establish apparent continuous use long enough before severance to support an implied easement by prior use.

Before turning to the district court's grant of summary judgment, we must address the district court's evidentiary rulings because "the admissibility of evidence presented in support of" or in opposition to a motion for summary judgment is "a threshold determination." *See Dupuis v. E. Idaho Health Servs. Inc.*, 168 Idaho 648, 655, 485 P.3d 144, 151 (2021) (quoting *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 14, 175 P.3d 172, 176 (2007)).

## A.  The district court did not err when it did not rely on Cobbley's affidavit.

The Schiffmans relied on Cobbley's affidavit to challenge Johnson's competence to testify in his declaration and notarized statement. Cobbley asserted that her ninety-five-year-old father had not been "mentally competent to testify from memory" about legal matters "for at least two years." She stated that Johnson moved in with her in November 2023 after "his mental and physical capacity had declined to a point where he [was] unable to care for himself safely." She further asserted that he "has not been diagnosed with Alzheimer's, but he does suffer from long term and short term Dementia[,]" explaining:

> [Johnson] is present in casual conversations as long as the topic discussed align[s] with his interests such as mechanics or caterpillar tractors. Even at that he will most times forget who he talked to or what they discussed within 15 to 30 minutes after the conversation ended. He cannot recall details from long term memories or experiences to any degree of accuracy.
>
> . . . [Johnson] knows who he is but does not understand conversations that don't pertain to his interests.
>
> . . . When [Johnson] is asked questions in a conversation where a person is trying to pin down the details of a past incident, he is easily "led" to conclusions and will respond with "That sounds about right" with no idea what he is agreeing to. This is especially true if someone is trying to describe a situation from the past.

8

His memory has faded to a point where there is no accurate recall of details of the past.

The district court granted CHE's motion to strike Cobbley's affidavit after concluding that her testimony about Johnson's competence was speculative and lacked foundation. The court applied Rule 56 of the Idaho Rules of Civil Procedure and relied on this Court's decision in *Nelsen v. Nelsen*, 170 Idaho 102, 124, 508 P.3d 301, 323 (2022), to determine that Cobbley did not provide factual foundation about Johnson's diagnosis, the timing of any diagnosis, or the progression of any condition. The court also observed that Cobbley had limited knowledge of how Johnson's declaration was prepared and that she did not express any concern about his competence when the affidavit arrived in the mail, and she presented it to him for his review and signature.

The Schiffmans argue that the district court abused its discretion by excluding Cobbley's affidavit based on *Nelsen*, which, in their view, is distinguishable. CHE responds that the district court acted within its discretion because the affidavit was presented to impeach Johnson's declaration by asserting incompetence and relying on hearsay and conclusions rather than admissible facts.

In *State v. Smith*, this Court explained the distinction between "lay opinion testimony" from a witness who testifies to facts they observed, under Idaho Rule of Evidence 701, and expert testimony from a witness who gives opinion testimony based on "specialized knowledge within the scope of Rule 702." 170 Idaho 800, 816–17, 516 P.3d 1071, 1087–88 (2022); *see also State v. Frandsen*, ___ Idaho ___, ___, 581 P.3d 319, 339 (2025) (same). The determination of whether testimony qualifies as lay or expert opinion is based on two main factors: (1) whether the testimony is based on the witness's personal knowledge gained through everyday reasoning, as required by Rule 602, or (2) whether it is based on "scientific, technical, or other specialized knowledge" that is "not generally known, or available to, the general public" under Rule 702. *Smith*, 170 Idaho at 817–18, 516 P.3d at 1088–89; *compare* I.R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."), *with* I.R.E. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").

Under Rule 701 of the Idaho Rules of Evidence, a lay witness may offer opinions or inferences only when they are rationally based on the witness's perceptions and are helpful to the trier of fact. *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 750 n.3, 274 P.3d 1256, 1265 n.3 (2012) (citing I.R.E. 701). However, a lay witness may not testify based on scientific, technical, or other specialized knowledge. *See Smith*, 170 Idaho at 817, 516 P.3d at 1088. Such testimony is permitted only from a qualified expert under Rule 702. *State v. Rambo*, 173 Idaho 272, 285, 540 P.3d 974, 987 (2023) (citing *Smith*, 170 Idaho at 818, 516 P.3d at 1089).

Cobbley's affidavit illustrates the difference between factual observations and opinion testimony. *See Smith*, 170 Idaho at 816–17, 516 P.3d at 1087–88. She described Johnson's living arrangements, conversations she had with her father, and his responses. Those statements reflect observations. *See id.* at 818, 516 P.3d at 1089 ("[A]n opinion or inference conforms to Rule 701(c) if it is reached through the application of every day reasoning or the consultation of a resource available to the general public."). However, Cobbley went further and asserted that Johnson suffered from long-term and short-term dementia, was not mentally competent to testify, and could not accurately recall past events. Those assertions are conclusions that require facts demonstrating, at the very least, the basis for Cobbley's knowledge, or her competence to give a medical opinion.

Determining whether memory loss reflects dementia, whether such memory loss renders a person incompetent to testify, and whether Johnson is susceptible to suggestion are matters that depend on the application of scientific, technical, or specialized knowledge, which may only be offered through an expert witness. *See id.* at 817–18, 516 P.3d at 1088–89. The Schiffmans did not disclose Cobbley as an expert witness. They did not provide any testimony establishing her scientific, technical or other specialized knowledge. *See* I.R.E. 702. Nor did Cobbley provide sufficient testimony to show that she was competent to testify about either Johnson's mental decline or his competence to testify. *See id.*

In addition, her affidavit lacked an adequate foundation showing how she acquired personal knowledge of the matters she was testifying about. "Declarations submitted on summary judgment 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated.'" *Mortensen v. Baker*, 170 Idaho 744, 753, 516 P.3d 1015, 1024 (2022) (alteration in original) (quoting I.R.C.P. 56(c)(4)). More than a generalized assertion of personal knowledge is required for a statement to be admissible, and Cobbley's status as Johnson's caregiver is insufficient to establish the

requirements outlined in Idaho Civil Procedure Rule 56(c)(4). While Cobbley described conversations with her father and his responses to questions, she used those descriptions to reach conclusions about diagnosis and competence without supplying additional admissible facts to support her conclusions. Cobbley did not state *how* she knows that Johnson is not competent to give legal testimony or how she knows that he has a tendency to agree without understanding the topic with which he agrees.

Cobbley's statement that Johnson "has not been diagnosed with Alzheimer's, but he does suffer from long term and short term Dementia[,]" highlights the error. She does not explain how she knows Johnson has dementia. She testified that Johnson does not have a formal diagnosis but does not add whether that meant he was treated by doctors, whether she accompanied him to appointments, or any other support for how she knows Johnson suffers from dementia.

Moreover, Cobbley's personal knowledge about the preparation of Johnson's declaration was limited and did not provide facts supporting the competency conclusion she offered. Cobbley testified:

> When we received in the mail, a statement for [Johnson] to sign from the Law Office . . . , I read it to him, he listened, and replied "That sounds about right." He signed it, and sent it back. As I was unaware of what the situation was all about, I allowed him to do so. In retrospect, when he said the words "That sounds about right" I should have keyed in on the fact that he was agreeing to something that he had no accurate memory of.
>
> . . . The statement sent to [Johnson] from the Law Office which they asked him to sign was not in his own words nor from his own memory. As previously stated, it is in his nature to agree to what is being said and to go along with it.
>
> . . . Apparently there was a previous statement that [Johnson] gave to the Law Office . . . that was not satisfactory to the attorneys, so they sent the second one as a revised version which, again, was certainly not [Johnson's] own words.
>
> . . . I asked [Johnson] today if he remembers signing either one of those statements, or if he remembers what the statements were about. He could not recall anything about either statement or that he had even signed them.

Cobbley's testimony did not state facts showing that she had personal knowledge of Johnson's mental decline *at the time he executed his declaration* or written statement and, if so, how she knew about his mental decline at the time of the relevant events, to a degree that would permit the court to assess whether Johnson lacked the competence to testify at that time.

The Schiffmans attempt to distinguish *Nelsen* by arguing that the testimony in that case concerned testamentary capacity and observations remote in time, whereas Cobbley addressed the

11

moment she read the declaration to Johnson and he signed it. They also argue that, in contrast to *Nelsen*, no attorney evaluated Johnson's competence before signing, and that Cobbley's affidavit is the only evidence addressing his capacity at that time. The district court did not rely on *Nelsen* for factual similarity. Instead, it applied *Nelsen* for the principle that lay descriptions of age-related mental decline, without factual foundation, are speculative and conclusory. *See* 170 Idaho at 124, 508 P.3d at 323. After identifying similar defects in Cobbley's affidavit, the district court applied that principle to Cobbley's assertions regarding Johnson's mental decline and susceptibility.

Accordingly, we hold that the district court acted within its discretion by striking Cobbley's affidavit because her affidavit did not state facts showing her competence to testify to a medical diagnosis or Johnson's competence to testify at the relevant time, and her affidavit asserted statements that lacked adequate foundation.

**B. The district court erred in relying on Johnson's statements in his declaration over the Schiffmans' objection.**

The district court erred when it relied on portions of Johnson's declaration over the Schiffmans' objections based on lack of foundation, conclusory statements, and absence of personal knowledge. Although parts of Johnson's declaration set out facts within his personal knowledge, some statements are conclusory and lack an adequate foundation showing how Johnson acquired personal knowledge of those matters. The full text of his declaration in support of summary judgment reads as follows:

> I, ROGER JOHNSON, pursuant to Idaho Rule of Civil Procedure 2.7 and Idaho Code [section] 9-1406, and upon personal knowledge of the facts and circumstances recited herein, declare as follows:
>
> 1. I am a citizen of the United States, a resident of Idaho, am over the age of twenty-one, and am competent to testify to the matters set forth herein. The information and facts contained in this Declaration are based on my personal knowledge.
>
> 2. I have personal knowledge of the property at issue in this matter currently owned by Crystal Homestead Estates, LLC, Parcel Number RPR4225002400 (hereinafter "Crystal Property").
>
> 3. I moved to McCammon, Idaho in 1946, when I was 17 years old and I have resided in the area since that time. I am familiar with every aspect of the family farm.
>
> 4. Upon moving to McCammon, my family purchased the property that included the land that lies between the Crystal Property and the private road identified as Crystal Springs Road, which is now identified as Parcel Numbers RPR4225004118 and RPR4225004119 (originally one large parcel).

5. When we purchased our property, there were two roads that gave access from Crystal Springs Road to the Crystal Property through our property.

6. It was well known that the owners of Crystal Property had every right and authority to access their Crystal Property through our property.

7. In 1952 my family realized that the deed had not been properly recorded so they took steps to get a proper deed from the [S]tate which was recorded in Bannock County.

8. My property was later divided into several sections, including the two Parcels Numbered RPR4225004118 and RPR4225004119, and sold with the understanding that access to the Crystal Property would continue across the established roads.

9. The two sections were sold and they are currently owned by the brothers, Mathew Schiffman, and Michael Schiffman, respectively . . . .

10. Access to the Crystal Property set by historic precedence, is necessary through the parcels now owned by the Schiffmans.

11. Since we originally purchased the land that included Parcel Numbers RPR4225004118 and RPR4225004119 (as a single parcel) in 1946, the roads to access the Crystal Property are the same roads that have been used, without interruption, from 1946 to current.

I declare under penalty of perjury pursuant to the law of the State of Idaho that the forgoing is true and correct to the best of my knowledge.

The Schiffmans moved to strike Johnson's declaration because it contained inadmissible conclusions and lacked foundation. While addressing CHE's motion for summary judgment, the district court briefly stated that it "declined the [Schiffmans'] request to strike the Declaration of Roger Johnson." Elsewhere in the order, while granting CHE's motion to strike Cobbley's affidavit, the court stated that Johnson "submitted a declaration based upon his 'personal knowledge' of the facts and circumstances of this case and the area and properties at issue."

If a party objects to the admissibility of evidence presented in support of a motion for summary judgment, "the court *must* first make a threshold determination as to the admissibility of the evidence 'before proceeding to . . . whether summary judgment is appropriate.'" *Dupuis v. E. Idaho Health Servs.*, 168 Idaho 648, 655, 485 P.3d 144, 151 (2021) (quoting *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 14, 175 P.3d 172, 176 (2007)). "The hallmark of a discretionary decision that is not reached by an exercise of reason is arbitrariness." *Hollis v. State*, 174 Idaho 168, 175, 551 P.3d 1262, 1269 (2024) (quoting *State v. Le Veque*, 164 Idaho 110, 115, 426 P.3d 461, 466 (2018)). The district court considered Johnson's declaration, reasoning that it was based on his personal knowledge. However, while the court made the threshold determination, it failed

13

to address all the Schiffmans' objections. The court erred by not addressing the Schiffmans' specific objections to Johnson's declaration that the declaration contained inadmissible conclusions and lacked foundation.

A court must determine whether affidavits "set out facts that would be admissible in evidence," *Bronco Elite Arts & Athletics, LLC v. 106 Garden City, LLC*, 172 Idaho 506, 515, 534 P.3d 558, 567 (2023) (citation omitted), and were made on personal knowledge:

> An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Sworn or certified copies of all papers or parts of papers referred to in an affidavit must be attached to or served with the affidavit.

I.R.C.P. 56(c)(4).

The court quoted and relied on Johnson's statement that "[i]t was well known that the owners of Crystal Property had every right and authority to access their Crystal Property through our property." The statement lacks foundation because Johnson did not explain what he meant by "well known" or how he knew access through his family's property was "well known." The court next relied on Johnson's statements that the parcels were "sold with the understanding that access to the Crystal Property would continue across the established roads." This statement is speculative and lacks foundation because it is unclear who was a part of "the understanding" or how he knew that there was an understanding that access would continue. The court also relied on Johnson's statement that "[a]ccess to the Crystal Property set by historic precedence, is necessary through the parcels now owned by the Schiffmans." This statement is conclusory. "A statement is conclusory if it does not contain supporting evidence for its assertion." *Eldridge v. West*, 166 Idaho 303, 311, 458 P.3d 172, 180 (2020). The statement also lacks foundation because Johnson did not explain what he meant by "historic precedence" or how he knew "[a]ccess . . . is necessary . . . ." In summary, Johnson's declaration does not describe what Johnson observed or experienced. Instead, he asserts what was "well known," what legal "right and authority" existed, and what purchasers understood, without identifying the facts on which those assertions are based.

CHE counters that Johnson's statements were admissible under hearsay exceptions for reputation concerning personal or family history under Rule 803(19) of the Idaho Rules of Evidence and reputation concerning boundaries or customs affecting land under Rule 803(20). However, even if a hearsay exception applies, a declaration must still satisfy the requirement that the declarant establish personal knowledge of the asserted facts, how he knew what legal rights

14

existed, or how he knew what understandings accompanied later sales. In short, the declaration lacked the necessary foundation to establish that Johnson had personal knowledge of the asserted facts.

Finally, the district court also relied on the timing of Johnson's notarized statement and declaration to support their admissibility, noting that the notarized statement predated Johnson's move to his daughter's home. The notarized statement signed by Johnson reflected as follows:

May 15, 2023

To whom it may concern,

I, Roger Johnson, wish to give my testimony regarding the property up Crystal Springs that is currently owned by Crystal Homestead Estates LLC. The Parcel number is RPR4225002400, I will call the property the Crystal Property.

I moved to the McCammon in 1946 and we purchased the property that lies between the Crystal property and the Crystal Springs Road. When we acquired our property, there were two roads that gave access to the Crystal Property through our property. It was well known that the owners of the Crystal Property had every right and authority to access their property through ours.

We later divided the property into two sections, and they are currently owned by two brothers, Mathew and Michael Schiffman. I want my testimony to be clear that those roads that go through the Schiffman properties are the legal accesses to the Crystal Property. The roads that are currently being used are the same roads that were there when I purchased the property in 1946.

The timing of the notarized statement and declaration addressed the issue of Johnson's competence raised by Cobbley's affidavit; however, the statement does not provide a foundation for the identical substantive assertions in Johnson's declaration.

We hold that the district court erred by concluding that Johnson's testimony that lacked foundation was admissible.

## C. The district court erred in granting CHE's motion to strike the entirety of Matthew's and Michael's affidavits.

Matthew's and Michael's affidavits are materially identical. The district court struck several specific paragraphs from each affidavit, then granted CHE's motion to strike both affidavits in full. It determined that the affidavits were "repeatedly contradictory, conclusory, speculative, and generally not supported by personal knowledge as required by [Idaho Civil Procedure] Rule 56." The court cited inconsistencies regarding truck access to the trail, transport, and the use of farm equipment. The court also noted that neither Matthew nor Michael claimed any farming or grazing experience or personal knowledge of historical use prior to their ownership.

15

In addition, the court observed that the identical language in both affidavits "raise[d] questions of credibility."

On appeal, the Schiffmans advance three main challenges to the order striking the affidavits. First, they argue that the district court improperly assessed credibility and weighed the evidence on summary judgment by striking the entirety of the Schiffmans' affidavits while considering all of CHE's. Second, they assert that the court misapplied the hearsay rule. Third, they claim that the court "tossed out the entirety" of both affidavits, in full, including portions without any identified evidentiary defect. We address each contention in turn.

The Schiffmans' first argument is unpersuasive. While the district court noted that "the repeated use of identical or nearly identical language in the affidavits raises questions of credibility[,]" it did not strike the affidavits on that basis. Instead, the court concluded that the identical statements about Crystal Farm's operation, equipment, crops, and land use were unsupported opinions "lacking foundation by failing to show affirmatively that the affiants are competent to testify regarding those particular factual allegations." Moreover, the statements were not based on personal knowledge. The court also determined that the brothers' statements—that CHE's or its predecessor's use of the alleged easements was not continuous, not adverse, and, if any use occurred, it had been with their permission—were merely conclusory legal opinions rather than admissible factual evidence. In context, the court's reference to credibility was merely an offhand observation. It is clear that the court ultimately did not rely on the affidavits for lack of foundation.

The Schiffmans next argue that the district court misapplied the hearsay rule in two ways. The court struck Matthew's and Michael's statements that, when purchasing their parcels, they asked Johnson's real estate agent about roads or rights-of-way and were told there were none. The court concluded that the agent's statements to Matthew and Michael were hearsay and lacked a proper foundation. The court also excluded that Matthew's references to a cease-and-desist letter from his attorney allegedly sent to Christensen's landlord, reasoning that the letter was not introduced as evidence, and Matthew did not identify the attorney or provide "any admissible foundation for the existence of the letter."

We agree with the district court's treatment of the real estate agent's statements made to the Schiffmans. Rule 802 of the Idaho Rules of Evidence provides that "hearsay" is not admissible unless an exception applies. *See* I.R.E. 802. "'Hearsay' means a statement that: (1) the declarant

16

does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." I.R.E. 801(c)(1)–(2). The parties do not dispute that the real estate agent's statements to Matthew and Michael were made out of court. The Schiffmans instead contend that the statements were not offered to prove the absence of easements, but to show that they lacked knowledge of any easements over their property when they purchased their parcels. Yet, the affidavits do not merely assert the brothers' state of mind. They state that the brothers asked about roads and rights-of-way and were "unequivocally told there were none." The statements were offered for the truth of the matter asserted, namely, that no roads or rights-of-way existed. The district court therefore correctly concluded that the statements were hearsay.

We also agree with the district court's treatment of Matthew's reference to the cease-and-desist letter. The Schiffmans argue that Matthew's account was unrefuted, and that Christensen could have disputed receipt of the letter. However, the issue is whether the statement was supported by admissible evidence, not whether it was contested. As the district court noted, the Schiffmans did not introduce the letter, identify the attorney, or provide admissible evidence of its existence. The court did not abuse its discretion in striking that portion of Matthew's affidavit.

The Schiffmans' final argument has merit. They contend that the district court erred by striking both affidavits in full, including the first seven paragraphs of each, even though the court did not identify a specific ground of inadmissibility for those paragraphs. CHE argues that striking these paragraphs was harmless because the same facts appeared in its verified complaint, and the deeds were undisputed. However, CHE's response addressed the merits of its motion for summary judgment, not its motion to strike. The key inquiry is whether those paragraphs were admissible under Idaho Rule of Civil Procedure 56(c)(4).

As previously stated, Rule 56 requires that an affidavit or declaration "set out facts that would be admissible in evidence." I.R.C.P. 56(c)(4). A statement is not inadmissible merely because it is cumulative of other material in the record, although a trial court retains discretion to manage cumulative evidence. *See Ballard v. Kerr*, 160 Idaho 674, 695, 378 P.3d 464, 485 (2016).

The first seven paragraphs of each affidavit satisfy Rule 56(c)(4). In those paragraphs, each brother stated that he is an Idaho resident, over 21 years old, and "competent to testify in the matters set forth . . . ." Each identified the parcel he purchased in 1983, stated that he purchased the parcel from Johnson, and attached a certified copy of the warranty deed. The paragraphs stating the brothers' ages and residence set out background facts concerning the identity of the witness

17

and the parcel the witness purchased. These statements do not express opinions, rely on out-of-court statements, or advance conclusory assertions unsupported by facts. A witness's residence, age, purchase of property, and possession of a deed are matters the witness may know from his own perception and experience. *See State v. Smith*, 170 Idaho 800, 815, 516 P.3d 1071, 1086 (2022) (explaining that lay witness testimony is limited to facts the witness has "seen, heard, felt, smelled, tasted, or done").

Thus, although the district court identified specific inadmissible paragraphs in Matthew's and Michael's affidavits, it did not identify any basis for excluding the first seven paragraphs of either affidavit. We hold that those seven paragraphs satisfied the requirements of Rule 56(c)(4) of the Idaho Rule of Civil Procedure. The district court therefore erred in striking the affidavits of Matthew and Michael in full.

**D. We reverse the district court's order granting summary judgment because, as a matter of law, CHE did not establish the second element of an implied easement by prior use.**

CHE did not establish the second element of an implied easement by prior use as a matter of law because the summary judgment record, when limited to admissible evidence and viewed in the light most favorable to the Schiffmans, contains genuine issues of material fact regarding the timing of severance and whether there was apparent continuous use for a long enough time before separation of the dominant estate to demonstrate that the use was intended to be permanent. To establish an implied easement by prior use, the owner of the dominant estate must prove three elements:

> (1) unity of title or ownership and a subsequent separation by grant of the dominant estate; (2) apparent continuous use long enough before separation of the dominant estate to show that the use was intended to be permanent; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate.

*Aizpitarte v. Minear*, 170 Idaho 186, 193, 508 P.3d 1260, 1267 (2022) (quoting *Spectra Site Commc'ns, Inc. v. Lawrence*, 160 Idaho 570, 574, 377 P.3d 75, 79 (2016)). The second element requires proof that the claimed use was apparent and continuous for a sufficient period *before severance* to support a presumption that the parties intended the use to continue after separation. *Id.* at 194, 508 P.3d at 1268. Because the inquiry "focus[es] on the time that the unified estate was severed[,]" the timing of severance is material to the analysis. *Id.* In other words, "[t]he time that is legally relevant to the question of 'apparent continuous use' is the time the dominant and servient estates were severed." *Id.* (quoting *Capstar Radio Operating Co. v. Lawrence*, 160 Idaho 452, 459, 375 P.3d 282, 289 (2016))).

The district court concluded that CHE established the second element because Johnson's declaration showed that the two access roads existed and both were used for at least two years before severance. That conclusion rested on the court's acceptance of Johnson's account as undisputed after striking Matthew and Michael's affidavits and considering Johnson's declaration without separating admissible factual testimony from inadmissible conclusions.

On appeal, the Schiffmans' challenge centers on the district court's conclusion that CHE established "apparent continuous use" long enough before severance. They argue that a genuine issue of material fact exists regarding when the first severance occurred and whether Johnson's testimony supplies evidence of use that predates that severance.

The district court found the severance occurred in October 1948, when the State of Idaho conveyed portions of Crystal Farm to Ellis D. Willmore. Using that date, the court reasoned that Johnson's statement that his family acquired control of the servient land in "approximately 1946" and that the access roads existed at that time established "at least two years prior to the State of Idaho selling the Section 9 portion of Crystal Farm to Ellis Willmore in 1948." The court then concluded:

> [T]he undisputed evidence shows that the western access road and the eastern access road have been in continuous use as the right-of-way between Crystal Springs Road and Crystal Farm since before 1946. . . . [T]he evidence before this [c]ourt shows that before the parcels were divided by the Johnson family's purchase of the servient land, the access roads were known to be for the purpose of accessing the dominant land.

The Schiffmans challenge the court's decision on two bases. First, they argue that CHE itself asserts that severance occurred in 1946, when the Johnson family purchased the servient estate. Under that theory, Johnson's testimony does not establish use "long enough before" severance because his personal knowledge of the land cannot begin earlier than the asserted severance. Second, they note that the deed to the Johnson property was recorded in 1952, which further complicates the severance timeline and undermines the assumption that Johnson's testimony establishes pre-severance use tied to the relevant conveyance.

We disagree with the argument that the only way to establish "apparent continuous use" is by personal observation of the use before severance of the dominant and servient estates. *See, e.g.*, *Bird v. Bidwell*, 147 Idaho 350, 352, 209 P.3d 647, 649 (2009) ("Because the intent to grant or reserve the easement is a necessary element, there is no logical reason to base the decision solely upon the grantor's presumed intent from prior use and to exclude other relevant evidence of that

19

intent."). That said, these competing positions highlight a material dispute regarding the severance date that implicates the second element of the implied easement analysis. Because any use before severance is a key consideration for the second element, uncertainty about when severance occurred raises issues of fact concerning whether the use was long enough before severance to show the use was intended to continue. The district court's conclusion that Johnson's testimony established "at least two years" of pre-severance use could only be reached by construing the disputed facts in CHE's favor. As there were no other facts offered to show intent other than apparent continuous prior use, the uncertainty regarding when unity of title was severed raised a genuine issue of material fact that precluded summary judgment.

Because the record presents genuine issues of material fact regarding the timing of severance, which in turn impacts the determination of whether any prior use occurred long enough before severance to support a presumption that the use was intended to continue, CHE did not establish the second element of an implied easement by prior use as a matter of law. Therefore, we conclude that the district court erred in granting summary judgment, and that its order granting summary judgment should be reversed.

## E. Neither party is entitled to attorney fees on appeal.

Both parties request attorney fees and costs on appeal under Idaho Code sections 12-120 and 12-121. The Schiffmans also seek attorney fees under Idaho Code section 6-202, which requires reasonable attorney fees as costs in any civil action brought against a "person who enters or remains upon the real property of another person without permission . . . ." I.C. § 6-202(2)(a), (3)(a)(ii).

Idaho Code sections 12-120 and 12-121 both permit the award of reasonable attorney fees to the prevailing party. I.C. §§ 12-120(1), -121. CHE is not the prevailing party on appeal; therefore, CHE is not entitled to attorney fees or costs.

Although the Schiffmans prevailed on appeal, we decline to consider their request for attorney fees. This Court has long held that a request for attorney fees on appeal must be supported by legal authority or argument. *See Marlar v. Gearhart*, 175 Idaho 262, ___, 564 P.3d 1195, 1202 (2025); *accord E. Side Highway Dist. v. Kootenai County*, ___ Idaho ___, ___, 572 P.3d 153, 162 (2025). The Schiffmans do not present any argument in support of their request. In their opening brief, the Schiffmans state a request for "attorney fees on appeal pursuant to Idaho Code [sections] 12-120, 12-121 and . . . 6-202." Their reply brief merely states they "request that attorney fees be

awarded [to] them against CHE for opposing this [a]ppeal." The Schiffmans' "general request is insufficient to merit an award of attorney fees" under Idaho Code sections 12-120, 12-121, or 6-202. *See Alpha Mortg. Fund II v. Drinkard*, 169 Idaho 446, 453, 497 P.3d 200, 207 (2021). Accordingly, we decline the Schiffmans' request for attorney fees; however, we award them costs on appeal as a matter of right under Rule 40(a) of the Idaho Appellate Rules.

## V. CONCLUSION

The district court erred by considering and relying on portions of Johnson's declaration that lacked foundation and personal knowledge, and it further erred by striking admissible portions of the Schiffmans' affidavits. In addition, CHE did not establish as a matter of law that apparent continuous use occurred long enough before severance to support their claim for an implied easement by prior use. Accordingly, we vacate the judgment quieting title to easements across the Schiffman Properties, reverse the district court's order granting summary judgment, and remand for further proceedings consistent with this opinion. The Schiffmans are awarded their costs on appeal.

Chief Justice BEVAN and Justices BRODY, MOELLER, and ZAHN CONCUR.

21